1  Thomas G. Ryan
   Nevada Bar No. 9378
2  Tryan@lrlaw.com
   Lindsay C. Demaree
3  Nevada Bar No. 11949
   Ldemaree@lrlaw.com
4  LEWIS AND ROCA LLP
   3993 Howard Hughes Parkway, Suite 600
5  Las Vegas, NV 89169
   Telephone: (702) 949-8200
6  Facsimile: (702) 949-8398
   *Attorneys for Tribal Council Defendants*
7  *Ruby Steele, Candida Hunter, Waylon Honga*
   *Charles Vaughn, Sr., Sherry Counts and*
8  *Wilfred Whatoname, Sr.*

9

10                **IN THE UNITED STATES DISTRICT COURT**

11                    **FOR THE DISTRICT OF NEVADA**

12  GRAND CANYON SKYWALK              | Case No.:  **2:13-cv-00596-RCJ-GWF**
    DEVELOPMENT, LLC, a Nevada limited
13  liability company; DAVID JIN, an individual;
    THEODORE (TED) R. QUASULA, an
14  individual,

15              Plaintiffs,

16      vs.

17  RUBY STEELE, CANDIDA HUNTER,      | **HUALAPAI TRIBAL COUNCIL DEFENDANTS'**
    WAYLON HONGA, CHARLES VAUGHN,     | **MOTION TO DISMISS AND/OR STAY**
18  SR., SHERRY COUNTS, WILFRED
    WHATONAME, SR., each individuals and
19  members of the Hualapai Tribal Council;
    PATRICIA CESSPOOCH, an individual and
20  member of the Hualapai Tribe; DAVID JOHN
    CIESLAK, an individual; NICHOLAS PETER
21  "CHIP" SCUTARI, an individual; SCUTARI
    & CIESLAK PUBLIC RELATIONS, INC., an
22  Arizona corporation,

23              Defendants.

24

25

26

27

28

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89169

3530681

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

HUALAPAI TRIBAL COUNCIL DEFENDANTS' MOTION TO DISMISS AND/OR STAY ............................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................... 2

I.     OVERVIEW ................................................................................................. 2

II.    PLAINTIFFS' FACTUAL ALLEGATIONS ......................................................... 3

III.   PLAINTIFFS' CLAIMS AGAINST THE TRIBAL COUNCIL DEFENDANTS MUST BE DISMISSED ............................................................................................. 9

    a.    Plaintiffs Fail to State a Claim Under Rule 12(b)(6) ................................. 9

        i.    Motion to Dismiss Standard ................................................ 9

        ii.   Plaintiffs Fail to State a Claim for Defamation Against the Tribal Council Defendants ................................................ 10

            1.    The Tribal Council Defendants' statements are not capable of defamatory construction. ...................... 11

            2.    Plaintiffs fail to sufficiently allege the Tribal Council Defendants acted with "actual malice." .......................... 13

        iii.  Plaintiffs' Remaining Claims for Business Disparagement and Conspiracy Also Fail. ................................................ 16

    b.   Plaintiffs' Claims Must Be Dismissed Under State and Federal Law Because They Improperly Interfere with the Tribal Council Defendants' Right to Petition. ............................................... 17

        i.    Nevada's Anti-SLAPP Statute Bars Plaintiffs' Claims ................. 17

        ii.   The Noerr-Pennington Doctrine Bars Plaintiffs' Claims .............. 21

    c.   The Court Lacks Personal Jurisdiction over the Tribal Council Defendants ................................................................. 23

        i.    This Court Lacks General Jurisdiction over the Tribal Council Defendants ......................................................... 24

        ii.   This Court Lacks Specific Jurisdiction over Steele, Hunter and Whatoname ................................................ 24

        iii.  Conclusion ...................................................................... 25

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89169

3530681.6

d.   The Court Lacks Subject-Matter Jurisdiction ............................................. 25

   i.   The Court Must Abstain from Exercising Jurisdiction Because Plaintiffs Have Not Exhausted Their Tribal Court Remedies ................................................................. 25

      1.   There can be no motivation to harass or bad faith because the tribal court has not asserted jurisdiction with respect to this action. ................................. 26

      2.   An action in the Hualapai Tribal Court would not patently violate express jurisdictional prohibitions because there is none. ........................................ 27

      3.   Exhaustion would not be futile because the Tribal Court offers an adequate opportunity to challenge jurisdiction. ........................................................ 28

      4.   The Tribal Court has jurisdiction. ..................................... 28

      5.   The Court should also abstain so that the Tribal Court can determine in the first instance whether plaintiffs' claims are barred by sovereign immunity. ......................... 30

      6.   The policies underlying the exhaustion requirement apply here. ................................................................. 31

      7.   Conclusion ............................................................... 31

   ii.   The Court Lacks Subject-Matter Jurisdiction over Plaintiffs' Claims Because Members of the Tribal Council Enjoy Tribal Sovereign Immunity ................................... 31

      1.   The Hualapai Tribe enjoys sovereign immunity under the Hualapai Constitution and federal law. ........................ 32

      2.   The Tribe's sovereign immunity extends to the Tribal Council Defendants if they acted in their official capacity and within the scope of their authority. ............... 33

      3.   The Tribal Council Defendants acted in their official capacity. ................................................................. 33

IV.   CONCLUSION ................................................................................. 35

# TABLE OF AUTHORITIES

**Page**

Federal Cases

*A & A Concrete, Inc. v. White Mountain Apache Tribe,*
   781 F.2d 1411 (9th Cir. 1986) ...........................................................27

*Adams v. Johnson,*
   355 F.3d 1179 (9th Cir. 2004) .............................................................3

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
   486 U.S. 492 (1988).............................................................................22

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986).............................................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)........................................................................*passim*

*Atwood v. Fort Peck Tribal Court Assiniboine,*
   513 F.3d 943 (9th Cir. 2008) .............................................................26

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
   223 F.3d 1082 (9th Cir. 2000),
   *overruled in part on other grounds by*
   *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
   433 F.3d 1199 (9th Cir. 2006) ...........................................................24

*Barger v. Playboy Enters., Inc.,*
   564 F. Supp. 1151 (N.D. Cal. 1983) ..................................................15

*BE & K Const. Co. v. N.L.R.B.,*
   536 U.S. 516 (2002).............................................................................13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................................9, 10, 15

*Besen v. Parents & Friends of Ex-Gays, Inc.,*
   2012 WL 1440183 (E.D. Va. Apr. 25, 2012) ....................................15

*Blanck v. Hager,*
   360 F. Supp. 2d 1137 (D. Nev. 2005).................................................11

*Carrasco v. HSBC Bank USA Nat'l Ass'n,*
   2011 WL 6012944 (N.D. Cal. Dec. 1, 2011)......................................15

*Contemporary Servs. Corp. v. Staff Pro Inc.,*
   152 Cal. App. 4th 1043 (2007)...........................................................20

**Page**

*Cook v. AVI Casino Enterprises, Inc.*,
　548 F.3d 718 (9th Cir. 2008) ...............................................................33, 34

*Dickens v. Provident Life & Acc. Ins. Co.*,
　117 Cal. Rptr. 3d 877 (App. 2004) ..............................................................17

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
　47 Cal. App. 4th 777 (1996) ......................................................................20

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
　365 U.S. 127 (1961)....................................................................................21

*Egiazaryan v. Zalmayev*,
　2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ...............................................15

*Empress LLC v. City & County of S.F.*,
　419 F.3d 1052 (9th Cir. 2005) ...................................................................21

*Espil v. Sells*,
　847 F. Supp. 752 (D. Ariz. 1994) ...............................................................26

*Fischer Sand & Aggregate Co. v. City of Lakeville*,
　874 F. Supp. 957 (D. Minn. 1994)...................................................21, 22, 23

*Fisher v. Prof'l Compounding Ctrs. of Amer., Inc.*,
　311 F. Supp. 2d 1008 (D. Nev. 2004) .........................................................23

*Flowers v. Carville*,
　112 F. Supp. 2d 1202 (D. Nev. 2000) .........................................................12

*Gertz v. Robert Welch, Inc.*,
　418 U.S. 323 (1974)...............................................................................10, 11

*Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*,
　Case No. 12-15634, 2013 WL 1777060 (9th Cir. Apr. 26, 2013) ...........6, 23

*Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*,
　Case No. CV12-8030, 2012 WL 1207149 (D. Ariz. Mar. 26, 2012) ............6

*Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa et al.*,
　Case No. 12-15634, 2013 WL 1777060 (9th Cir. Apr. 26, 2013) .................2

*Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa et al.*,
　Case No. 13-15375 (9th Cir.).................................................................6, 12

*Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa et al.*,
　Case No. CV12-8030-PCT-DGC (D. Ariz.).................................................2

iv

1

Page

*Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*,
  ___ F.3d ___, 2013 WL 1777060 (9th Cir. 2013) ....................................26

*Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa*,
  Case No. CV12-08183-PCT-DGC (D. Ariz.) ...........................................2

*Hanna v. Plumer*,
  380 U.S. 460 (1965) ................................................................................18

*Healy v. Tuscany Hills Landscape & Recreation Corp.*,
  137 Cal. App. 4th 1 (2006) .....................................................................20

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988) ..................................................................................16

*Hwal'bay Ba:j Enterprises, Inc. v. Beattie*,
  App. Div. Case No. 2008-AP-007 (Hualapai App. Div. 2008) ................32

*In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*,
  845 F. Supp. 1377 (D. Ariz. 1993) .........................................................21

*In re Western States*,
  2009 U.S. Dist. LEXIS at *54 .................................................................24

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................................23

*Iowa Mut. Ins. Co. v. LaPlante*,
  480 U.S. 9 (1987) ....................................................................................25

*Kiowa Tribe v. Mfg. Techs., Inc.*,
  436 U.S. 49 (1998) ..................................................................................32

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ..................................................................3

*Krempel v. Prairie Island Indian Cmty.*,
  125 F.3d 621 (8th Cir. 1997) ..................................................................28

*Laxalt v. McClatchy*,
  622 F. Supp. 737 (D. Nev. 1985) ............................................................24

*Marceau v. Blackfeet Hous. Auth.*,
  540 F.3d 916 (9th Cir. 2008) ..................................................................28

*Marceau v. Blackfeet Housing Authority*,
  540 F.3d 916 (9th Cir. 2008) .............................................................25, 29

v

**Page**

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ...................................................................14

*Metabolic Research, Inc. v. Ferrell*,
  693 F.3d 795 (9th Cir. 2012) ...................................................................17

*Miner Elec., Inc. v. Muscogee (Creek) Nation*,
  505 F.3d 1007 (10th Cir. 2007) ...............................................................31

*Monarch Entm't Bureau, Inc. v. New Jersey Highway Auth.*,
  715 F. Supp. 1290 (D.N.J. 1989)
  *aff'd,* 893 F.2d 1331 (3d Cir. 1989) .......................................................22

*Murgia v. Reed*,
  338 Fed. Appx. 614 (9th Cir. 2009) .........................................................34

*Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*,
  471 U.S. 845 (1985) ............................................................................25, 31

*Navajo Nation v. Intermountain Steel Bldgs., Inc.*,
  42 F. Supp. 2d 1222 (D.N.M. 1999) ........................................................26

*Nevill v. Chudacoff,*
  73 Cal. Rptr. 3d 383 (App. 2008) .............................................................19

*New York Times Co. v. Sullivan*,
  376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964) ............................14

*Nicosia v. De Rooy*,
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) .....................................................15

*Pan Am. Co. v. Sycuan Band of Mission Indians*,
  884 F.2d 416 (9th Cir. 1989) ...................................................................32

*Papasan v. Allain*,
  478 U.S. 265 (1986) ...................................................................................9

*Parisi v. Sinclair*,
  845 F. Supp. 2d 215 (D.D.C. 2012) .........................................................15

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ......................................................23, 24, 25

*R.J. Williams Co. v. Fort Belknap Housing Authority*,
  719 F.2d 979 (9th Cir. 1983) ...................................................................27

*Romanella v. Hayward*,
  933 F. Supp. 163 (D. Conn. 1996)
  *aff'd,* 114 F.3d 15 (2d Cir. 1997) ...........................................................34

**Page**

*Santa Clara Pueblo v. Martinez,*
    436 U.S. 49 (1978)..............................................................................32

*Schatz v. Republican State Leadership Comm.,*
    669 F.3d 50 (1st Cir. 2012)..............................................................15

*Schneck v. Saucon Valley Sch. Dist.,*
    340 F. Supp. 2d 558 (E.D. Pa. 2004).............................................21

*Sharber v. Spirit Mountain Gaming Inc.,*
    343 F.3d 974 (9th Cir. 2003) .....................................................26, 30

*Shay v. Walters,*
    702 F.3d 76 (1st Cir. 2012)..............................................................15

*Sosa v. DIRECTV, Inc.,*
    437 F.3d 923 (9th Cir. 2006) .....................................................21, 22

*St. Amant v. Thompson,*
    390 U.S. 727 (1968)..........................................................................14

*Stock West Corp. v. Taylor,*
    964 F.2d 912 (9th Cir. 1992) .....................................................28, 30

*Thomas v. News World Commc'ns,*
    681 F. Supp. 55 (D.D.C. 1988)........................................................15

*United States v. Nordic Village, Inc.,*
    503 U.S. 30 (1992)............................................................................32

*Venetian Casino Resort, L.L.C. v. Cortez,*
    96 F. Supp. 2d 1102 (D. Nev. 2000)..................................................3

*Verizon Delaware, Inc. v. Covad Comm. Co.,*
    377 F.3d 1081 (9th Cir. 2004) .........................................................17

*Vess v. Ciba-Geigy Corp.,*
    317 F.3d 1097 (9th Cir. 2003) .........................................................17

*Wilcox v. Superior Court,*
    27 Cal. App. 4th 809 (1994) ............................................................20

State Cases

*Circus Circus Hotels, Inc. v. Witherspoon,*
    99 Nev. 56, 657 P.2d 101 (1983)......................................................11

*John v. Douglas Cnty. Sch. Dist.,*
    125 Nev. 746, 219 P.3d 1276 (2009)...........................................17, 18

**Page**

*Lubin v. Kunin,*
   17 P.3d 422 (Nev. 2001) ...............................................................................11

*Miller v. Jones,*
   114 Nev. 1291, 970 P.2d 571 (1998) ...........................................................14

*Nev. Indep. Broad. Corp. v. Allen,*
   99 Nev. 404, 664 P.2d 337 (1983) ...............................................................14

*Pegasus v. Reno Newspapers, Inc.,*
   118 Nev. 706, 57 P.3d 82  (2002) ..........................................................*passim*

*Pope v. Motel 6,*
   121 Nev. 307, 114 P.3d 277 (2005) .............................................................14

*Price & Sons v. Second Judicial District Court,*
   108 Nev. 387, 831 P.2d 600 (1992) .............................................................24

*Richardson Const., Inc. v. Clark Cnty. Sch. Dist.,*
   123 Nev. 61, 156 P.3d 21 (2007) .................................................................18

*Towbin Dodge, LLC v. Eighth Judicial Dist. Court of State ex rel. Cnty. of Clark,*
   121 Nev. 251, 112 P.3d 1063 (2005) ...........................................................19

*Wynn v. Smith,*
   117 Nev. 6, 16 P.3d 424 (2001) .............................................................10, 13

Rules, Regulations and Statutes

NRS 14.065 .........................................................................................................23

NRS 41.637(1) ....................................................................................................18

NRS 41.637(3) ....................................................................................................18

NRS 41.650 .........................................................................................................18

NRS 41.660(2) ....................................................................................................17

NRS 41.670 .........................................................................................................18

NRS 41.673(3) ....................................................................................................19

Other Authorities

14D Charles Alan Wright, et al., Fed. Prac. & Proc. (3d ed.) § 3822 ............................27

Article XVI, Section 1 of the Constitution of the Hualapai Indian Tribe ................32, 33

1

**Page**

Hualapai Constitution, Art. V, Sec. (a)........................................................................35

Hualapai Constitution, Art. V, Sec. (dd)......................................................................35

U.S. Const. amend. I....................................................................................................21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HUALAPAI TRIBAL COUNCIL DEFENDANTS' MOTION TO DISMISS AND/OR STAY**

Defendants Ruby Steele, Candida Hunter, Waylon Honga, Charles Vaughn, Sr., Sherry Counts, and Wilfred Whatoname, Sr. (collectively, "Tribal Council Defendants") move the Court to dismiss and/or stay this action pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6), as well as Local Rule 7-2.  Plaintiffs' complaint fails on multiple grounds:

- The complaint fails to state a claim upon which relief can be granted because:
  - the statements attributed to the Tribal Council Defendants are neither defamatory nor disparaging, and
  - plaintiffs have failed to adequately plead "actual malice";
- Plaintiffs' claims interfere with the Tribal Council Defendants' petition rights in violation of the "immunity from civil liability" protection under Nevada's anti-SLAPP statute (NRS 41.635 *et seq*.) and the *Noerr-Pennington* doctrine;
- This Court lacks personal jurisdiction over certain Tribal Council Defendants;
- This Court should decline to exercise jurisdiction based on considerations of comity and failure to exhaust Tribal Court remedies; and
- The Tribal Council Defendants are entitled to sovereign immunity.

This motion is based on the pleadings and other papers filed in this action and is supported by the following Memorandum of Points and Authorities.

DATED this 7th day of June 2013.

LEWIS AND ROCA LLP


By:/s/*Thomas G. Ryan*_____
    Thomas G. Ryan
    Nevada Bar No. 9378
    Lindsay C. Demaree
    Nevada Bar No. 11949
    3993 Howard Hughes Parkway, Suite 600
    Las Vegas, Nevada  89169
    (702) 949-8200
    *Attorneys for Tribal Council Defendants*
    *Ruby Steele, Candida Hunter, Waylon Honga*
    *Charles Vaughn, Sr., Sherry Counts and*
    *Wilfred Whatoname, Sr.*

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   <u>OVERVIEW</u>

The Skywalk, a glass-bottomed viewing platform suspended 70 feet over the rim of the Grand Canyon, with the Colorado River flowing thousands of feet below, is situated on land held by the Hualapai Indian Tribe.  The Skywalk is a major tourist attraction.  It is also the focal point of a major dispute.  For years, Grand Canyon Skywalk Development, LLC ("GCSD"), and its principal, David Jin, on one hand, and the Tribe and 'Sa' Nyu Wa ("SNW"), a tribally chartered corporation, on the other hand, have fought over the parties' respective rights pertaining to the operations and ownership of the Skywalk.  The dispute has spawned multiple lawsuits and an arbitration.  As is apparent from a review of plaintiffs' complaint and its exhibits, the ongoing battle is the subject of intense interest among the Tribe's members and has drawn substantial media attention.  As is equally apparent, GCSD, Jin, and their spokespersons, including counsel, have participated in a vigorous, and public, debate (*see, e.g.*, Compl. Doc. 1 at Exs. 10-13, 15, 24-25), as have the Tribal Council Defendants.

Plaintiffs now aim to silence one side of the debate by what is merely the latest in a series of legal actions.[1]

Plaintiffs contend that the Tribal Council Defendants must be held liable, in tort, for expressing their views in this very public dispute.  Indeed, plaintiffs suggest that for the Tribal Council Defendants to express views contrary to those held (and expressed) by plaintiffs is to defame or disparage plaintiffs.  Thus would plaintiffs seek impede the Tribal Council Defendants' ability to communicate, comment, and exercise their role as the governing body of the Hualapai Tribe.

If plaintiffs' novel theory of liability were accepted (and it should not be), it would not

---

[1] *See Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa et al.*, Case No. CV12-8030-PCT-DGC (D. Ariz.); *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa*, Case No. CV12-08183-PCT-DGC (D. Ariz.); *see also Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa et al.*, Case No. 12-15634, 2013 WL 1777060 (9th Cir. Apr. 26, 2013) (affirming the District Court's order staying the case and requiring GCSD to exhaust Tribal Court remedies before any federal court challenge to the Tribe's exercise of eminent domain over GCSD's contract rights in and to the Skywalk); *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa et al.*, Case No. 13-15375 (9th Cir.) (currently pending appeal of District Court's order confirming arbitration award in favor of GCSD).  In addition, a separate action brought by GCSD is pending in the Tribal Court in which GCSD has challenged the Tribe's exercise of eminent domain.

only chill the basic right of freedom of speech but would also affront the sovereignty of the Hualapai Tribe and restrict the ability of the Tribal Council to govern.

For multiple reasons, the Tribal Council Defendants request that this Court either dismiss or stay this action.

## II.   PLAINTIFFS' FACTUAL ALLEGATIONS

David Jin is the principal of GCSD, an entity formed for the purpose of developing the Skywalk and related facilities on Hualapai land.  Compl. ¶¶ 7, 24.[2]  Theodore (Ted) Quasula is a member of the Hualapai Tribe and, from June 2010 to March 2012, the General Manager of GCSD.[3]  *Id*. ¶ 8.  Movants – Ruby Steele, Candida Hunter, Waylon Honga, Charles Vaughn, Sr., Sherry Counts and Wilfred Whatoname, Sr. – are members of the Hualapai Tribe and, at all relevant times, members of the Hualapai Tribal Council.  *See id.* at caption (noting the status of Ms. Steele *et al*. as "members of the Hualapai Tribal Council") & ¶¶ 10-15.

### *The Skywalk and Its Operations*

In 2003, GCSD and SNW, a tribally chartered corporation, entered into an agreement to develop and manage the Skywalk, a glass viewing platform extending over the edge of the Grand Canyon and located on Hualapai tribal land.  *See* Development and Management Agreement (the "Agreement"), attached hereto as Ex. A.[4]  Under the Agreement, GCSD was responsible for the construction of the Skywalk and related facilities and was awarded certain management rights.  Compl. ¶¶ 22-29 & Agreement at pp. 5-20.  The Agreement defines GCSD as the "Manager" and states that "Manager shall construct the Project Improvements," which are defined as "the Glass

---

[2] The Tribal Council Defendants do not concede any fact, but merely accept plaintiffs' factual allegations as true for purposes of this motion only.  *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (accepting allegations in the complaint as true to decide a motion to dismiss).  Plaintiffs' legal conclusions, however, are not entitled to an assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[3] The complaint confusingly refers to plaintiff Grand Canyon Skywalk Development, LLC and the Skywalk itself as "GCSD."  *Compare* Compl. ¶¶ 7 & 8.

[4] The court can take notice of the Agreement without converting the motion to dismiss into a motion for summary judgment because plaintiffs have incorporated the Agreement by reference in their pleading.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Venetian Casino Resort, L.L.C. v. Cortez*, 96 F. Supp. 2d 1102, 1106 (D. Nev. 2000) (holding that on a motion to dismiss, a court may consider documents of undisputed authenticity referenced in the complaint). The Agreement is central to plaintiffs' pleading and specifically identified in the complaint. *E.g.*, Compl. ¶ 28.

3

Bridge and adjacent building providing security and structural support for the Glass Bridge and which will also contain a gift shop, together with all related on and off-site improvements and infrastructure."[5]   Agreement at pp. 3-5.

The Skywalk opened to the public in 2007.  Compl. ¶¶ 34, 50.  Construction of the Visitors Center and other amenities, however, remained (and remains) incomplete.  GCSD claims that SNW and the Tribe failed to provide utilities and infrastructure to the Skywalk site necessary to complete such construction.  SNW and the Tribe contend that on- and off-site improvements and infrastructure were GCSD's responsibility.  *See id.* ¶¶ 47-50.

Plaintiffs allege that, after the Skywalk opened and from 2008 through 2011, (a) accounting irregularities were discovered, (b) the Tribe and its tribally chartered corporations, including SNW, "experienced significant internal political turmoil and economic disruption," including the turnover of SNW's entire board of directors, and (c) a resultant "disruption in communication between SNW and GCSD" occurred, with an attendant "loss of substantial corporate memory as to the parties' prior contractual agreement and corresponding obligations on the part of SNW."  *Id.* ¶¶ 42-44.

Plaintiffs allege, further, that "at least four members of the Tribal Council known locally as the "Gang of Four,"[6] . . . decided to withhold Jin's [*sic*] share of the management fees on the false and made up grounds that it had been Jin's obligation (and not the Tribe's) to construct millions of dollars of infrastructure for the delivery of utilities to the reservation."  *Id.* ¶ 51.   And, "[b]eginning in 2011, some of the Defendants began conspiring to invent a justification to take GCSD and Jin's contractual rights" and "agreed to lie about the . . . Agreement and GCSD and Jin's obligations in order to claim a breach of the . . . Agreement and in order to justify a takeover by Eminent Domain."  *Id.* ¶ 52.

/ / /

/ / /

---

[5] The "Manager" is defined as Grand Canyon West Development, LLC, which is believed to be a typographical error. *See* Agreement at pp. 3 & 46.

[6] The reference is to Ms. Steele, Ms. Hunter, Mr. Honga and Mr. Vaughn.  Compl. ¶ 51 n.1

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***The Arbitration, the Tribe's Exercise of Eminent Domain, and Related Litigation***

In February 2011, GCSD filed an action in Hualapai Tribal Court seeking to compel SNW to arbitrate the parties' dispute over their rights and obligations under the Agreement.  Thereafter, in April 2011, the Tribal Council passed Resolution No. 20-2011, attached hereto as Ex. B (enacting sec. 2.16 of the Hualapai Tribe Law and Order Code addressing the Tribe's eminent domain powers); *see also* Compl. ¶ 60.   Plaintiffs allege that "some of the Defendants," "[k]nowing that the . . . ordinance [*i.e.*, Resolution] would be unpopular, and that there needed to be a breach of the . . . Agreement," conspired to defame and disparage plaintiffs "in the hope of gaining support for the ordinance and a future taking."  Compl. ¶ 62.  Consequently, according to plaintiffs, "so [*sic*] of the Defendants, or one of them conceived the idea of alleging" breach of the Agreement by failing to bring utilities to the site.   *Id.* ¶ 63.   None of these unspecified "Defendants," plaintiffs allege, "participated in" or had "first-hand knowledge of the negotiations which took place years earlier" leading to the entry into the Agreement.  *Id.*

In August 2011, GCSD demanded arbitration pursuant to § 15.4 of the Agreement (which contained an arbitration provision and a limited waiver of SNW's sovereign immunity as to disputes arising out of the Agreement).  *See* Compl. ¶ 56.

Later, on February 7, 2012, the Tribal Council passed Resolution No. 15-2012, attached hereto as Ex. C, and, by that action, "acqui[red] . . . GCSD's contractual interest in the Skywalk Agreement under the power of eminent domain."  *See also* Compl. ¶¶ 58, 82-84.  After the Tribe exercised its eminent domain power and took control of Skywalk operations, the Tribal Council met with Skywalk employees, responded to questions and concerns of members of the Tribe, and explained why the Tribal Council had chosen to exercise its power.  *Id.* ¶¶ 87-89 & Exs. 16-17.

The Tribe also sought to dismiss GCSD's arbitration in the aftermath of its eminent domain taking, but the arbitrator ordered the arbitration to proceed.  *Id.* ¶¶ 58-59.  From that point on, SNW withdrew from any further participation in the arbitration.  *See id*. Ex. 32 at 4:9.  GCSD, as a consequence, presented its arbitration case without any opposition or appearance by SNW.  *Id.* ¶¶ 105-06.  The arbitrator entered an award in favor of GCSD and against SNW in August 2012, which award was later confirmed by the District Court (*see id*. Ex. 32), and the matter is

now on appeal to the 9th Circuit.  *Id.* ¶ 107; *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa et al.*, Case No. 13-15375 (9th Cir.).

GCSD also challenged the Tribe's exercise of eminent domain in a separate District Court action.  Denying GCSD's request for a temporary restraining order, the District Court determined that GCSD failed to exhaust its remedies in Tribal Court and stayed the action.  *See Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, Case No. CV12-8030, 2012 WL 1207149 (D. Ariz. Mar. 26, 2012).  GCSD appealed and the Ninth Circuit recently affirmed the District Court's stay order.  *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, Case No. 12-15634, 2013 WL 1777060 (9th Cir. Apr. 26, 2013).  GCSD also has opposed the Tribe's request for a temporary restraining order in the eminent domain action that the Tribe initiated before the Tribal Court after the Tribe exercised eminent domain.  *See Hualapai Indian Tribe v. Grand Canyon Skywalk Dev., LLC*, 2012-CV-017 (Hualapai Tr. Ct. 2012).  That action appears to remain pending but stayed.

### *The Tribal Council Defendants' Allegedly "Defamatory" Statements*

Plaintiffs claim the Tribal Council Defendants made various defamatory statements during the course of the parties' longstanding dispute.  More specifically, 18 of the 41 exhibits attached to their complaint contain statements attributed to Tribal Council Defendants that plaintiffs would characterize as defamatory.[7]  The statements contained in these 18 exhibits are set forth in Ex. D, attached hereto, and generally fall into one of three categories:  (1) the failure to meet contractual obligations (*e.g.*, Compl. Exs. 8, 12-13, 24-25, 27, 33-34, 36-39 & ¶¶ 73, 77, 95-96, 100, 109, 111, 118-120); (2) the failure to account for Skywalk revenues (*e.g.*, *id.* Exs. 15, 17, 27, 30-31, 36-38 & ¶¶ 79, 89, 100, 103-04, 118-19); and (3) the allegiance of Quasula, the former General Manager of GCSD, to GCSD/Jin (*e.g.*, *id.* Exs. 16-17 & ¶¶ 88-89).

As is evident from a review of these 18 exhibits, many of the statements of these Tribal Council Defendants are offered in response to media inquiries; others are communications from Tribal Council Defendants directly to their constituents (*i.e.*, members of the Tribe), and all of the statements are made as part and parcel of the Tribal Council Defendants' roles as leaders and

---

[7] Exs. 8, 12-13, 15-17, 24-25, 27, 29-31, 33-34, 36-39.

members of the governing body of the Hualapai Nation.   Specific examples of the alleged "defamation" include:

- "There's no ceiling, there's no interior walls, it is one big empty space . . . It's got a long way to go." *Id.* ¶ 77 (statement regarding the unfinished Visitors Center).

- "The tribe did not ask for this dispute . . . We have made a sincere effort through private negotiations with Mr. Jin, and he still refuses to make the most basic concessions and complete the work he promised." *Id.* ¶ 96.

- "The woe is me defense of Mr. Jin fails to explain that for the period of time he's alleging wrong doing by the tribe, he was in control of the money and the tribe is merely asking to see the record of that period in time which he is failing to provide.  Although he has presented documentation in the past that information failed to comply with generally accepted accounting practices, therefore, when he says that the development is worth $100 million, the tribe would like to see him substantiate the claim…." *Id.* Ex. 15 & ¶ 79.

- "Although Ted [Quasula] is an intelligent man, the history with Ted has been he's served on the corporate board, while he was serving on the corporate board, he also worked for David Jin. . . .  At that time, we told the council when it comes to David Jin, I won't vote on the board.  But it gives the appearance that you are not ethical as an individual.  And he knew with his intelligence, he knew that was an issue. . . .  I hope you don't take these things out of context and you [are] given a completely different interpretation of what was said." *Id.* Ex. 16 & ¶ 88.

### The Public Relations Campaign of GCSD, Jin and Their Spokespersons

Nor have plaintiffs been absent from this public debate.   On the contrary, they have, repeatedly and vigorously, voiced their "side of the story," as is clear from the exhibits to plaintiffs' complaint.  For example:

- "'This is extremely unfair,' said Jin spokeswoman Aimee Romero.  'David put $30 million into the project and he hasn't been paid since 2007.' * * * 'There's no transparency,' Romero said, 'He (Jin) doesn't have access to the tribe's books, what they are spending, what the profits are.'  Romero said the Hualapai tribe's status as a sovereign nation doesn't mean the tribe can take property without paying for it, but she said that's exactly what the tribal council tried to do April 4 when it approved a new eminent domain ordinance." *Id.* Ex. 10.

- "Aimee Romero, a spokeswoman for Skywalk Development, said utilities were always the tribe's responsibility. . . .  Romero said Jin's contract is worth $100 million over the next 21 years, based on earnings during 2009." *Id.* Ex. 11.

- While Jin conceded "he received some of what he was owed in 2007," Jin spokeswoman Romero reported "[h]e's not received a dime…" *Id.* Exs. 12-13.

In a June 2011 op-ed article entitled "Another side to Skywalk dispute," Jin himself provides his "side" on the parties' dispute:

- "Since opening the attraction four years ago, I [Jin] have not received millions of dollars the Hualapai Tribal Council owes me for managing the Skywalk.  They continue to collect

7

profits, yet refuse to distribute the money to me or the Hualapai people." *Id.* ¶ 78 & Ex. 15.

- "Now the Hualapai Tribal Council is threatening to keep my entire investment by using an over-reaching government tactic known as eminent domain.  This is clearly a desperate attempt to avoid opening their books and paying me three years of back-owed profits.  The council members appear to be equally desperate to convince the media and the public that this action is justified." *Id.*

- "These council members plan to seize my assets, valued at nearly $100 million, because they claim I am obligated to provide power, sewer and water utilities to the area and I have not done so.  In reality, the Tribal Council has failed to bring this infrastructure to the Skywalk so the visitors center can be completed and opened to the public." *Id.*

- "I believe this is a case of a few elected officials working to cover up the mismanagement of their books, without the full backing of the Hualapai people." *Id.*

Jin's comments are noteworthy.  He clearly acknowledges that, not only is the parties' dispute of significant public interest to the members of the Hualapai Tribe and others, but the disputed issues remain subject to governmental action by the Hualapai Tribe:  "The Hualapai people must decide *if they will allow this eminent domain law to stand*.  If the Hualapai Tribal Council seizes my assets through eminent domain, it will impact tribal people far beyond the Hualapai borders.  No business person will have confidence in investing in tribal communities if the Hualapai Tribal Council shows the world that they will not honor the contracts they sign." *Id.* (emphasis added).[8]

Jin's counsel is no less direct in his advocacy, suggesting that the Tribal Court is incapable of exercising independent judgment and telling the media that the Tribe's decision to condemn Jin's contract rights "[c]learly [] is an effort to sidestep any type of judicial oversight . . . .  They want all decisions to be made only by tribal judges that they hire, fire, and pay; and have resisted all efforts to have an independent judge or arbiter fairly review the facts." *Id.* Ex. 24 (*Arizona tribe votes to manage Skywalk*, Feb. 9, 2012); *see also id.* Ex. 25 ("The tribe has awarded themselves this draconian power to strip Mr. Jin's company of its constitutional rights").  Jin's camp further stated that the eminent domain taking vote "was a desperate attempt to avoid paying

---

[8] Significantly, the Constitution of the Hualapai Indian Tribe, a copy of which is attached as Ex. E,  provides a referendum process that permits tribal members to reconsider any Resolution of the Tribal Council:

> Upon petition of at least twenty-five (25) percent of the voters of the Tribe, or upon request of the majority of the members of the Tribal Council, any enacted or proposed ordinance, resolution, or other official action of the Tribal Council shall be submitted by the Tribal Council to popular initiative or referendum . . . .

Art. XIII of Hualapai Const.

1    Mr. Jin the millions of dollars in management fees he is presently owed and break his 25-year

2    management contract." *Id*. Ex. 24; *see also id*. Ex. 25.

3           As is evident, plaintiffs (and their spokespersons) have neither compunction nor concern in

4    expressing their own negative beliefs about the Tribal Council and its actions in an attempt to

5    persuade the public, in general, and the Tribe, in particular, to side with GCSD/Jin and to seek

6    reconsideration of the exercise of eminent domain.   Plaintiffs do not merely take issue with

7    comments of these Tribal Council Defendants.   Rather, they would seek, by this action, to muzzle

8    one side of the public debate and, in the process, curtail the ability of the Tribal Council to govern

9    the members of their own sovereign nation.

10   **III.   PLAINTIFFS' CLAIMS AGAINST THE TRIBAL COUNCIL DEFENDANTS MUST BE DISMISSED**

11          Plaintiffs' complaint undermines the First Amendment's right to freedom of speech and

12   right to petition and, further, conflicts with fundamental principles of jurisdiction, comity and

13   sovereign immunity.   It must be dismissed for at least five independent reasons:  (1) plaintiffs fail

14   to plead sufficient allegations to give rise to a valid claim against any of the Tribal Council

15   Defendants, *see* Fed. R. Civ. P. 12(b)(6); (2) plaintiffs' action against the Tribal Council

16   Defendants constitutes a strategic lawsuit against public participation ("SLAPP"), and the Tribal

17   Council Defendants are immune from liability under NRS 41.650 and the *Noerr-Pennington*

18   doctrine; (3) the Court lacks personal jurisdiction over certain of the Tribal Council Defendants;

19   (4) the Court should decline to exercise jurisdiction based on settled principles of comity and

20   exhaustion of remedies; and (5) subject-matter jurisdiction over the Tribal Council Defendants is

21   lacking on grounds of sovereign immunity.

22          **a.   Plaintiffs Fail to State a Claim Under Rule 12(b)(6)**

23                 **i.   Motion to Dismiss Standard**

24          While Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it

25   demands more than mere "labels and conclusions" or a "formulaic recitation of the elements of a

26   cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S.

27   265, 286 (1986)).   "Factual allegations must be enough to rise above the speculative level." *Bell*

28   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   To survive a motion to dismiss, a complaint

1    must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*,

2    556 U.S. at 678 (internal citations omitted).

3        In *Iqbal*, the Supreme Court clarified the two-step approach courts are to apply when

4    considering motions to dismiss.  First, a court must accept as true all well-pled factual allegations

5    in the complaint; however, legal conclusions are not entitled to an assumption of truth.  *Id*. at 679.

6    Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not

7    suffice.  *Id*. at 678.  Second, a court must consider whether the factual allegations in the complaint

8    allege a plausible claim for relief.  *Id*. at 679.  A claim is facially plausible when the complaint

9    alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the

10   alleged misconduct.  *Id*. at 678.  "But where the well-pleaded facts do not permit the court to infer

11   more than the mere possibility of misconduct, the complaint has alleged – but it has not shown –

12   that the pleader is entitled to relief."  *Id*. at 679 (internal quotation marks and alterations omitted).

13   When the claims in a complaint have not crossed the line from conceivable to plausible, the

14   complaint must be dismissed.  *Twombly*, 550 U.S. at 570.

15       Based on these pleading principles, plaintiffs' claims against the Tribal Council

16   Defendants must be dismissed.

### ii.  Plaintiffs Fail to State a Claim for Defamation Against the Tribal Council Defendants

17

18

19       To state a valid defamation claim, a plaintiff must plead: (1) a false and defamatory

20   statement; (2) an unprivileged publication to a third person; (3) fault, amounting to at least

21   negligence; and (4) actual or presumed damages.  *Wynn v. Smith*, 117 Nev. 6, 10, 16 P.3d 424, 427

22   (2001).

23       Moreover, in situations, such as here, involving a limited purpose public figure, a plaintiff

24   also must show, by clear and convincing evidence, "actual malice."  *Id.*; *Anderson v. Liberty

25   Lobby, Inc.*, 477 U.S. 242, 264 n.3 (1986); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351 (1974);

26   *see also Pegasus*, 118 Nev. at 710, 57 P.3d at 85 (holding plaintiffs, as restaurant owners, were

27   limited-purpose public figures for purposes of a food review).  A limited public figure is an

28   individual who has "achieved fame or notoriety based on their role in a particular public issue."

*Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 719 714, 57 P.3d 82, 91 (2002) (adopting *Gertz,*

10

418 U.S. at 351-52). "A limited purpose public figure is a person who voluntarily injects himself or is thrust into a particularly public controversy or public concern, and thereby becomes a public figure for a limited range of issues." *Id.* Jin and his camp clearly fall within the definition of a limited purpose public figure for purposes of this lawsuit given their voluntary statements to the media and unabashed attempts to sway the public in their favor on the Skywalk disputes.

Plaintiffs' complaint fails to state a plausible defamation claim against the Tribal Council Defendants for at least two reasons. First, the allegedly defamatory statements are not legally capable of a defamatory construction. Second, plaintiffs' factual allegations fail to show it was *plausible* (as opposed to merely possible/conceivable) that the Tribal Council Defendants made the alleged statements with the required "actual malice."

> *1. The Tribal Council Defendants' statements are not capable of defamatory construction.*

This Court serves as a gatekeeper for an actionable defamation claim, which requires the defendant's statements to be both false *and* defamatory. *See Lubin v. Kunin*, 117 Nev. 107, 111, 17 P.3d 422, 425-26 (2001) ("Whether a statement is defamatory is generally a question of law."); *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 62, 657 P.2d 101, 105 (1983); *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1159 (D. Nev. 2005) ("[I]t is a question of law and, therefore, within the province of the court, to determine if a statement is capable of a defamatory construction."). While a fact-finder may be necessary to determine whether a factual assertion is true or false, the court first must distinguish non-actionable statements of opinions from potentially-actionable statements of fact: "Statements of opinion…are not actionable….[G]enerally, only assertions of fact, not opinion, can be defamatory." *Pegasus*, 118 Nev. at 714, 57 P.3d at 87-88 (internal quotations omitted).

"In determining whether a statement is actionable for the purposes of a defamation suit, the court must ask whether a *reasonable* person would be likely to understand the remark as an expression of the source's opinion or as a statement of *existing fact*." *Id*. at 715, 57 P.3d at 87 (internal quotation omitted) (emphasis added). The Nevada Supreme Court has cited the following factors to consider when distinguishing opinion from fact:

(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible to being proved true or false.

*Id.* at 715 n.19, 57 P.3d at 87 n.19 (citing *Flowers v. Carville,* 112 F. Supp. 2d 1202, 1211 (D. Nev. 2000)).

The Tribal Council Defendants' statements cannot be found defamatory under Nevada law.

*First*, each of the alleged statements was explicitly published as part of a larger discussion regarding the parties' Skywalk dispute. No reasonable person reading statements made in a news article about feuding parties would assume that comments made by one party's representatives were "statements of existing fact," rather than the party's opinion and position on the issue. This is especially true for the various articles cited by plaintiffs. Each independently-authored news story juxtaposes the Tribal Council's statements against Jin's position on the dispute. *E.g.*, Compl. Exs. 12-13, 15, 24-25, 33, 37. Other alleged statements were set forth in letters to or meetings with Tribe members aware of, and keenly interested in, matters concerning the Skywalk dispute, a central, and much-debated, political issue among the Tribe. *E.g., id.* Exs. 8, 16-17, 27, 38-39. And other statements were explicitly labeled and published as opinion or editorial pieces. *E.g., id.* Exs. 34, 36; *see also id.* Ex. 31 (Facebook post that expressly notes the author's conclusions were based on math calculations using "assume[d]" values). In sum, the "general tenor" of these entire works negates any possible perception that the Tribal Council Defendants were asserting "an objective fact." *Pegasus,* 57 P.3d at 87 n.19, 118 Nev. at 715 n.19; *Flowers*, 112 F. Supp. 2d at 1211.

*Second*, the alleged statements concern issues which were – and remain – unresolved, not "objective" and "existing" facts. *See Pegasus,* 57 P.3d at 87 & n.19, 118 Nev. at 715 & n.19; *Flowers*, 112 F. Supp. 2d at 1211. To the extent plaintiffs try to rely on the August 2012 arbitration award to claim it is now an objective fact that GCSD was not responsible for providing the Skywalk infrastructure and did not mismanage Skywalk funds, their argument is flawed for several reasons: (a) the validity of the arbitration award remains in question given the pending appeal, *see Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa et al.,* Case No. 13-15375 (9th Cir.); (b) success or failure in a litigation does not necessarily reflect truth or falsity (especially where,

12

as here, the arbitration decision was based on only the one-sided evidence presented by GCSD), *see BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 532-33 (2002) ("For even if a suit could be seen as a kind of provable statement, the fact that [the suit] loses does not mean [the "statement" it reflects] is false. At most it means the plaintiff did not meet its burden of proving its truth. That does not mean the defendant has proved-or could prove-the contrary."); and (c) the majority of the statements of which plaintiffs complain occurred *before* the arbitration award was rendered (*see* Compl. Exs. 8, 15-17, 24-25, 27, 29-31 & ¶¶ 73, 79, 88-89, 95-96, 100, 102-04).   The issues concerning plaintiffs' compliance with the Agreement remain unclear and cannot constitute objective, existing facts capable of giving rise to a defamation claim.   Likewise, GCSD's challenge to the Tribal Council's eminent domain taking remains contested by virtue of GCSD's pending action in the Tribal Court (and subject to potential reconsideration by popular initiative or referendum of the Tribe pursuant to the Tribe's Constitution (*see* n.8, supra)).

    *Third*, Nevada law requires a statement to be false, *see Wynn*, 117 Nev. 6, 16 P.3d 424, and plaintiffs have failed to allege falsity with respect to several of the alleged defamatory statements. For example, they do not dispute that Jin was investigated by the FBI, as mentioned in Hunter's Facebook post.  *See* Compl. Ex. 29 & ¶ 102.  Nor do they dispute that Quasula worked for and is loyal to Jin.  *See* Compl. Exs. 16-17 & ¶¶ 88-89.  Because plaintiffs have not pleaded falsity (except as a mere legal conclusion), they have not shown they are entitled to recover for defamation based on these statements.  *See Iqbal*, 556 U.S. at 679.

    Upon examination of the 18 exhibits on which plaintiffs' claims against the Tribal Council Defendants are based, none of the statements is legally capable of a defamatory construction under Nevada law.  Plaintiffs' defamation claim therefore fails and should be dismissed.

### 2. *Plaintiffs fail to sufficiently allege the Tribal Council Defendants acted with "actual malice."*

    Like their failure to plead a defamatory statement, plaintiffs also fail to properly plead "actual malice" on the part of the Tribal Council Defendants – a requirement for limited purpose public figures such as plaintiffs.  *See Pegasus*, 118 Nev. at 721, 57 P.3d at 92.

    Under Nevada law, a person acts with actual malice if he acts with "knowledge that [the defamatory statement] was false or with reckless disregard of whether it was false or not."  *Id.* at

719, 57 P.3d at 90 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964) (internal quotation marks omitted); *Miller v. Jones*, 114 Nev. 1291, 1298, 970 P.2d 571, 576 (1998).  Actual malice focuses on the defendant's belief regarding truthfulness, not on the defendant's feelings toward the plaintiff.  *Nev. Indep. Broad. Corp. v. Allen*, 99 Nev. 404, 414, 664 P.2d 337, 344 (1983).  Reckless disregard exists where the defendant had "a high degree of awareness of the probable falsity of the statement or had serious doubts as to the publication's truth."  *Pegasus*, 118 Nev. at 719, 57 P.3d at 90-91 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (internal quotation marks and alterations omitted)); *see also Miller*, 114 Nev. at 1299, 970 P.2d at 576.

Significantly, the test for reckless disregard is subjective.  It relies on what an individual defendant *personally* believed and intended to convey.  *Pegasus*, 118 Nev. at 722, 57 P.3d at 92; *see also Pope v. Motel 6*, 121 Nev. 307, 310, 318, 114 P.3d 277, 279, 284 (2005) (plaintiff "failed to advance any evidence of malice" where evidence did not demonstrate defendant made statements with knowledge of their falsity).  And "failure to investigate alone, or to read other previously printed material is not grounds for a finding of actual malice."  *Pegasus*, 118 Nev. at 723, 57 P.3d at 93.

While Rule 9(b) permits a party to allege malice "generally," the Supreme Court made clear in *Iqbal* that "'generally' is a relative term."  556 U.S. at 686.  Rule 9(b) "does not give [a party] license to evade the less rigid – though still operative – strictures of Rule 8.  And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." 556 U.S. at 686-87 (internal citation omitted).  Thus, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Based on the principles enunciated by Supreme Court in *Iqbal*, every federal appellate court to consider the issue has held that defamation cases must be dismissed in circumstances identical to this case – where a plaintiff cannot plead factual allegations that plausibly establish the requisite actual malice.  *See, e.g., Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) (affirming judgment on the pleadings where plaintiff made only

"conclusory allegation[s]" of actual malice and alleged facts showed absence of malice); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56-58 (1st Cir. 2012) (affirming dismissal where plaintiff pleaded "actual-malice buzzwords" but alleged facts and news reports upon which challenged report was based, which could be judicially noticed, showed absence of malice); *Shay v. Walters*, 702 F.3d 76, 82-83 (1st Cir. 2012) (affirming dismissal of defamation claim where complaint "contains conclusory allegations about 'ill-will' and 'actual malice,'" but "no factual assertions that in any way lend plausibility to these conclusions").[9]  Although informed by the Supreme Court's decisions in *Iqbal* and *Twombly*, these cases are no seismic shift in the law.  For years, federal courts have dismissed complaints where actual malice was necessary, but a plaintiff's allegations were facially insufficient.  *See, e.g., Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1109 (N.D. Cal. 1999) (dismissing defamation claim by conceded public figure because alleged "animus" and "economic interests" failed to plead actual malice); *Thomas v. News World Commc'ns*, 681 F. Supp. 55, 65 (D.D.C. 1988) (granting motion to dismiss where "[t]he complaint lacks any colorable claim that *The Washington Times* published the challenged statements with actual malice"); *Barger v. Playboy Enters., Inc.*, 564 F. Supp. 1151, 1156 (N.D. Cal. 1983) ("broad conclusory allegations of malice" insufficient to survive motion to dismiss), *aff'd*, 732 F.2d 163 (9th Cir. 1984) (unpublished).

Here, plaintiffs have failed to plead facts capable of showing that it is *plausible*, not merely possible, that the Tribal Council Defendants made alleged defamatory statements with knowledge or reckless disregard of falsity.  *See Iqbal*, 556 U.S. at 679-80; *Twombly*, 550 U.S. at 570.  Plaintiffs allege that none of these defendants "participated in" or had "first-hand knowledge" of the negotiation of the Agreement.  *See* Compl. ¶ 63.  They further allege that there was "a loss of substantial corporate memory as to the parties' prior contractual agreement and corresponding

---

[9] In addition to the First and Fourth Circuits, a host of district courts have also rejected defamation claims where a plaintiff failed to allege facts that could plausibly support a finding of actual malice. *See, e.g., Besen v. Parents & Friends of Ex-Gays, Inc.*, 2012 WL 1440183, at *5-6 (E.D. Va. Apr. 25, 2012) (dismissing claim by public figure who pleaded "scant" allegations of actual malice); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218-19 (D.D.C. 2012) (dismissing claims for libel and false light invasion of privacy where plaintiff conceded public figure status but set forth only "conclusory" allegations of actual malice); *Egiazaryan v. Zalmayev*, 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011) (dismissing claim where defamation plaintiff alleged facts indicating ill will, but not awareness of falsity); *Carrasco v. HSBC Bank USA Nat'l Ass'n*, 2011 WL 6012944, at *4 (N.D. Cal. Dec. 1, 2011) (dismissing slander of title claim where plaintiff made only boilerplate allegations of actual malice).

1   obligations on the part of SNW." *Id*. ¶ 44.  Their own allegations, accordingly, reflect the absence

2   of either knowledge or reckless disregard, and particularly so in light of the Agreement's language

3   placing responsibility on GCSD to construct Project Improvements "together with all related on

4   and off-site improvements and infrastructure."[10]   (True, the arbitrator found that infrastructure

5   responsibility rested with SNW, but SNW did not even participate in the arbitration hearing.)  In

6   sum, plaintiffs do not allege facts sufficient to demonstrate that it was plausible that each and

7   every one of the Tribal Council Defendants had actual knowledge of falsity or serious doubts

8   about the truth regarding his or her statements.  Other than their single, plainly insufficient factual

9   allegation regarding defendants' lack of knowledge, *see* Compl. ¶ 63, plaintiffs resort to mere

10  labels, conclusions, and formulaic recitations to plead malice.  *See, e.g.*, *id*. ¶¶ 108, 133, 140.

11      Plaintiffs' allegations of malice fall short of the pleading standards set forth in Rule 8,

12  *Iqbal*, and *Twombly*.  Consistent with the weight of federal authorities, the Court should dismiss

13  plaintiffs' claims because they fail to plead actual malice, as required to prove defamation in this

14  case.

15          ### iii.  Plaintiffs' Remaining Claims for Business Disparagement and Conspiracy Also Fail.

16      In addition to their core defamation claim, plaintiffs allege the Tribal Council Defendants

17  are liable for business disparagement and conspiracy.  These claims also fail because of plaintiffs'

18  failure (and inability) to plead actual malice.  As the United States Supreme Court has explained,

19  the "actual malice" requirement "reflects our considered judgment that such a standard is

20  necessary to give adequate 'breathing space' to the freedoms protected by the First Amendment."

21  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988).  Plaintiffs cannot get around this

22  constitutional requirement simply by pleading common law claims that do not explicitly include

23  actual malice as an element.  *See id.* (holding public figure plaintiff could not recover for

24  intentional infliction of emotional distress based on publication of cartoon without showing the

25  cartoon contained a false statement of fact made with "actual malice").  Accordingly, plaintiffs'

26

27

28
---
[10] Further, under Nevada law, the failure of the Tribal Council Defendants to investigate is, without more, insufficient to show actual malice.  *See Pegasus*, 118 Nev. at 723, 57 P.3d at 93.

claims for business disparagement and conspiracy must, like their defamation claim, be dismissed because they fail to plead actual malice.

### b.  Plaintiffs' Claims Must Be Dismissed Under State and Federal Law Because They Improperly Interfere with the Tribal Council Defendants' Right to Petition

Not only should plaintiffs' claims against the Tribal Council Defendants be dismissed pursuant to Rule 12(b)(6), but they should also be dismissed because they are based on communications protected by Nevada's anti-SLAPP statute, NRS 41.635 *et seq.*, and the federal *Noerr-Pennington* doctrine.  These laws protect a party's First Amendment right to petition by barring civil liability for conduct aimed at or directly connected to government actions.  Because the alleged statements and conduct of the Tribal Council Defendants were aimed at or directly connected to government actions taken by the Tribe, plaintiffs' claims fail once again.

### i.  Nevada's Anti-SLAPP Statute Bars Plaintiffs' Claims

A strategic lawsuit against public participation ("SLAPP") is a "meritless suit filed primarily to chill the defendant's exercise of First Amendment rights."  *John v. Douglas Cnty. Sch. Dist.,* 125 Nev. 746, 752, 219 P.3d 1276, 1280 (2009) (quoting *Dickens v. Provident Life & Acc. Ins. Co.*, 117 Cal. Rptr. 3d 877, 882 (App. 2004)).  As both the Ninth Circuit and the Nevada Supreme Court have recognized, SLAPP lawsuits carry significant risks: (1) "that men and women will be chilled from exercising their rights to petition the government for fear of the costs and burdens of resulting litigation;" and (2) "that unscrupulous lawyers and litigants will be encouraged to use meritless lawsuits to discourage the exercise of first amendment rights. *Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 799-800 (9th Cir. 2012) (citing *John,* 125 Nev. 746, 219 P.3d at 1282); *see also John*, 125 Nev. at 752, 219 P.3d at 1281 ("SLAPP lawsuits abuse the judicial process by chilling, intimidating, and punishing individuals for their involvement in public affairs.").

To counter these risks, the Nevada Legislature enacted an anti-SLAPP statute, which permits a defendant sued in federal court to strike state law claims and recover attorneys' fees and costs when they prevail.  *Verizon Delaware, Inc. v. Covad Comm. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (citing *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1109-10 (9th Cir. 2003)); *accord* NRS 41.660(2) (permitting a SLAPP victim to bring a special motion to dismiss within 60 days

17

after service of the complaint); NRS 41.670 (authorizing award of attorneys' fees and costs).[11]

While Nevada case law on this issue is sparse, the Nevada Supreme Court looks to California's anti-SLAPP jurisprudence, as Nevada's statute is "similar in purpose and language" to California's anti-SLAPP statute. *John*, 125 Nev. 752, 219 P.3d at 1281.

Under Nevada's anti-SLAPP statute, a party is "immune from civil liability" for claims based on "a good faith communication in furtherance of the right to petition." NRS 41.650. The Nevada Legislature has outlined three types of protected communications:

"Good faith communication in furtherance of the right to petition" means any:

1.   Communication that is aimed at procuring any governmental or electoral action, result or outcome;

2.   Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity; or

3.   Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law,

which is truthful or is made without knowledge of its falsehood.

NRS 41.637.  Plaintiffs have not properly pleaded, and cannot actually demonstrate, that the Tribal Council Defendants made any of the alleged statements with knowledge of its falsity. *See* Section III.a.ii.2, *supra* (discussing plaintiffs' failure to plead the same requirements to establish "actual malice"). Accordingly, the Tribal Council Defendants are immune from suit because their alleged statements are communications that fall within the scope of NRS 41.637(1) and NRS 41.637(3).

By their plain language, NRS 41.650 and 41.637(1) immunize the Tribal Council Defendants from suit because their alleged statements were "aimed at procuring any governmental or electoral action, result or outcome." *See Richardson Const., Inc. v. Clark Cnty. Sch. Dist.*, 123 Nev. 61, 64, 156 P.3d 21, 23 (2007) (when construing a statute, the court "may look no further than any unambiguous, plain statutory language"); *Towbin Dodge, LLC v. Eighth Judicial Dist.*

---

[11] To the extent the dismissal procedure set forth in Nevada's anti-SLAPP statute conflicts with the federal Rule 12(b)(6), this Court's procedural rules must govern. *See generally Hanna v. Plumer*, 380 U.S. 460 (1965).

18

*Court of State ex rel. Cnty. of Clark*, 121 Nev. 251, 253, 112 P.3d 1063, 1065 (2005) (holding statute "must be enforced as written").  The Tribal Council Defendants' statements were all directed at ensuring the Hualapai government's eminent domain resolution and subsequent taking of GCSD's intangible contract rights remained in effect – an unequivocal governmental "outcome."  Indeed, under the Constitution of the Hualapai Indian Tribe, tribal members have the ability to override, by popular initiative or referendum, the governmental actions of the Tribal Council.  *See* Art. XIII of Hualapai Const.

The Tribal Council Defendants are also immune under NRS 41.637(3) because their statements regarding plaintiffs were made in connection with the Hualapai government's consideration of the same Skywalk-related issues.  For example, in *Neville v. Chudacoff*, the California Court of Appeal affirmed dismissal of a SLAPP lawsuit brought by the plaintiff, a former employee of the defendant, for defamation.  73 Cal. Rptr. 3d 383, 385 (App. 2008).  The defendant employer fired the plaintiff "amid allegations that [he] had misappropriated customer lists and solicited his employer's customers to start a competing business."  *Id.*  The employer subsequently circulated a letter to its customers that accused the plaintiff of breach of contract, misappropriation of trade secrets, and suggested to the customers that, to avoid potential involvement as a witness in any ensuing litigation, they should not do business with the former employee.  *Id.*  The Court of Appeal held that the letter to the customers was a "writing made in connection with an issue under consideration or review by a ... judicial body," and consequently fell within the scope of petitioning activity under the anti-SLAPP statute.  *Id.* at 386; *cf.* NRS 41.673(3).

In reaching its conclusion, the appellate court rejected the plaintiff's argument that the letter was not within the scope of the statute because it was published months before the employer commenced litigation against him and was sent to customers not involved in the dispute.  After a comprehensive analysis of applicable California case law, the appellate court concluded that the mere commencement of litigation did not determine whether a communication was "made in connection" with an issue under judicial review.  *See Neville*, 73 Cal. Rptr. 3d at 393-95.  And it further observed that nothing in the anti-SLAPP provision – which mirrors NRS 41.637(3) –

19

1   prohibited a communication from being sent to parties other than those directly involved in the

2   litigation at issue. *Id.* at 394. "That provision has been held to protect statements to persons who

3   are not parties or potential parties to litigation, provided such statements are made 'in connection

4   with' pending or anticipated litigation." *Id.* at 394-95 (citing *Contemporary Servs. Corp. v. Staff*

5   *Pro Inc.*, 152 Cal. App. 4th 1043, 1055 (2007) (e-mail to customers accusing competitor of

6   litigation-related misconduct); *Healy v. Tuscany Hills Landscape & Recreation Corp.*, 137 Cal.

7   App. 4th 1, 5-6 (2006) (letter from homeowners association to nonparty association members);

8   *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996) (letter to

9   celebrity participants in charitable recording preparatory to lodging complaint with state attorney

10  general); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 821-22 (1994) (statements to nonparties

11  soliciting contributions to litigation fund)).

12          Just as the letter to customers in *Neville*, the alleged statements by the Tribal Council

13  Defendants in this case also are protected under NRS 41.637(3), regarding communications made

14  in connection with an issue under consideration by a judicial body. Plaintiffs' allegations concede

15  that the issues addressed in the alleged statements about Jin and GCSD concern the same issues

16  that were (and still are) the subject of ongoing litigation – *i.e.*, the parties' obligations and rights

17  under the Agreement. And, as the communications in *Neville* and the other cited California

18  authorities demonstrate, the Tribal Council Defendants are permitted to communicate about these

19  issues to others.

20          Each of the alleged communications also is directly connected to issues under

21  consideration by the Tribal Council, the Hualapai Tribe's governing body. *See* Arts. V & VII,

22  Hualapai Const. Each statement regarding Quasula consists of comments of Vaughn or Honga, at

23  the request of the Tribal Council's constituents, regarding the Tribal Council's decision not to re-

24  hire Quasula to assist with management of the Skywalk following the Tribe's exercise of eminent

25  domain. Compl. ¶¶ 88-89, Exs. 16-17. The statements regarding Jin and GCSD likewise justify

26  and explain the Tribal Council's actions, on behalf of the Tribe, to contest Jin and GCSD's claims

27  under the Skywalk Agreement and the exercise of the Tribe's eminent domain rights. And the

28  Tribal Council Defendants have an even greater interest in freely communicating with others –

20

both the constituents they represent and the general public with which the government must interact – without fear of reprisal in light of their need to effectively legislate and conduct government business.

In sum, Nevada's anti-SLAPP statute prohibits plaintiffs' attempt, through this lawsuit, to muzzle the ability of the Tribal Council Defendants to communicate regarding issues that are (a) the subject of ongoing legal actions and (b) directly connected with the Tribe's exercise of governmental functions.  Plaintiffs' claims against the Tribal Council Defendants must therefore be dismissed.

### ii.   The *Noerr-Pennington* Doctrine Bars Plaintiffs' Claims

The federal *Noerr-Pennington* doctrine also bars plaintiffs' claims.  Like Nevada's anti-SLAPP statute, "the *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people ... to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I).  It protects persons who petition any department of the government from liability for their petitioning conduct.  *Id.* at 930 ("Recognizing the constitutional foundation of the doctrine, the Supreme Court has applied *Noerr-Pennington* principles outside the antitrust field."); *Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005); *see also In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 845 F. Supp. 1377, 1384 (D. Ariz. 1993) ("The protection has been extended to litigation and includes claims other than those brought under the antitrust laws," including state tort claims).  As the Supreme Court explained, "In a representative democracy such as this, [the legislative and executive branches] of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives." *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137 (1961).

Because the need for open communication is essential for a representative government's ability to function, the *Noerr-Pennington* doctrine also protects governmental actors from suit. *E.g.*, *Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 577 (E.D. Pa. 2004); *Fischer Sand & Aggregate Co. v. City of Lakeville*, 874 F. Supp. 957, 959 (D. Minn. 1994); *Monarch Entm't*

21

1    *Bureau, Inc. v. New Jersey Highway Auth.*, 715 F. Supp. 1290, 1303 (D.N.J. 1989) *aff'd*, 893 F.2d

2    1331 (3d Cir. 1989).

3
    > The fact that Defendants are government officials and acted in their official
4    > capacity does not deprive them of the protection of the *Noerr–Pennington* doctrine.
    > *In fact, it is more likely that such government defendants act with the intent of*
5    > *advancing the public interest in exercising their First Amendment rights than*
    > *private petitioners; this buttresses the justification for clothing the Defendants with*
6    > *immunity from suit arising from their petitioning activities.*  In any event, the Court
    > finds no reason that public officials and municipalities should receive any less
7    > protection under *Noerr–Pennington* than private petitioners and thus concludes that
    > all Defendants, including the City of Lakeville, fall within the scope of the *Noerr–*
8    > *Pennington* doctrine.

9    *Fischer Sand & Aggregate Co.*, 874 F. Supp. at 959 (internal citations omitted) (emphasis added).

10          Moreover, the *Noerr-Pennington* doctrine must be construed broadly to "overprotect[]

11   baseless petitions so as to ensure citizens may enjoy the right of access … without fear of

12   prosecution."  *Sosa*, 437 F.3d at 934; *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*,

13   486 U.S. 492, 499-500 (1988) ("A publicity campaign directed at the general public, seeking

14   legislation or executive action, enjoys antitrust immunity even when the campaign employs

15   unethical and deceptive methods.").

16          Here, just as the Tribal Council Defendants' alleged statements fall within the scope of the

17   anti-SLAPP statute's protections, they also fall within the scope of *Noerr-Pennington*'s protection.

18   The statements each reflect the Tribal Council Defendants' efforts, as Hualapai government

19   representatives, to effectuate government action.  Specifically, each statement is part of the efforts

20   by the Tribal Council to enforce the Tribe's rights, and obtain its corresponding benefits,

21   regarding the Skywalk for the good of Hualapai people.  *Allied Tube & Conduit Corp.*, 486 U.S. at

22   501.

23          And the Tribal Council Defendants' acts clearly fall within the "breathing space" afforded

24   by *Noerr-Pennington*.  For one, their positions on the various Skywalk disputes are not objectively

25   meritless:  the Agreement can be reasonably read to obligate GCSD to develop the Skywalk's

26   utility infrastructure (*see* Agreement, which notes that the "Manager shall construct the Project

27   Improvements," defined as the Glass Bridge, etc. "*together with all related on and off-site*

28   *improvements and infrastructure*"); the Ninth Circuit's recent decision action implicitly

     recognized that, as a sovereign nation, the Tribe may have the right to condemn GCSD's

                                                    22

1    intangible interests in the Skywalk, *see Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*,

2    Case No. 12-15634, 2013 WL 1777060 (9th Cir. Apr. 26, 2013) (discussing "a tribe's inherent

3    authority over tribal land"); and Vaughn's and Honga's justifications for their failure to support

4    Quasula as a potential manager of the tribally-operated Skywalk are plainly reasonable given

5    Quasula's allegiance to, and employment by, GCSD/Jin.

6          Each statement attributed to the Tribal Council Defendants relates directly to their efforts,

7    as tribal government representatives, to effectuate government action on behalf of the Tribe.

8    Because the Tribal Council Defendants' petitioning conduct falls within the broad scope of the

9    *Noerr-Pennington* doctrine, the Court must dismiss plaintiffs' claims to ensure sufficient

10   "breathing room" for the First Amendment.

11           **c.   The Court Lacks Personal Jurisdiction over the Tribal Council Defendants**

12          Even if plaintiffs had pleaded an actionable claim against the Tribal Council Defendants

13   (they have not), the Court lacks personal jurisdiction over Steele, Hunter and Whatoname.

14          To avoid dismissal under Rule 12(b)(2), plaintiffs bear the burden of demonstrating that

15   (1) personal jurisdiction over each defendant is permitted under Nevada's long-arm statute; and

16   (2) the exercise of jurisdiction does not violate federal due process.  *Pebble Beach Co. v. Caddy*,

17   453 F.3d 1151, 1154 (9th Cir. 2006).  Nevada's long-arm statute allows courts to exercise personal

18   jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution.

19   NRS 14.065; *see also Fisher v. Prof'l Compounding Ctrs. of Amer., Inc.*, 311 F. Supp. 2d 1008,

20   1013 (D. Nev. 2004).   Accordingly, this Court need only determine whether exercising personal

21   jurisdiction over the Tribal Council Defendants meets the requirements of due process.  *Fisher*,

22   311 F. Supp. 2d at 1013-14.

23          For due process to be satisfied, a defendant, if not present in the forum, must have

24   "minimum contacts" with the forum state such that the exercise of personal jurisdiction "does not

25   offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326

26   U.S. 310, 316 (1945); *Pebble Beach*, 453 F.3d at 1155.  A court's exercise of personal jurisdiction

27   over a non-resident defendant may be either general or specific.  *Fisher*, 311 F. Supp. 2d at 1014.

28   / / /

**i.  This Court Lacks General Jurisdiction over the Tribal Council Defendants**

"The standard for establishing general jurisdiction is 'fairly high,' and requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199 (9th Cir. 2006) (en banc).  But "[a] high level of contact with the forum state is necessary to establish general jurisdiction." *Price & Sons v. Second Judicial District Court,* 108 Nev. 387, 390, 831 P.2d 600, 601 (1992).  Factors to be considered are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.  *Bancroft,* 223 F.3d at 1086.  "A few vacations or personal trips…made into Nevada do not constitute the level of activities which must exist for general jurisdiction to lie." *Laxalt v. McClatchy*, 622 F. Supp. 737, 742 (D. Nev. 1985).

Significantly, plaintiffs have filed suit against various Tribal Council members, not the Hualapai tribe or a tribal corporation.  None of these individuals is alleged to live in Nevada (see Compl. ¶¶ 10-15), hold property in Nevada, engage in personal business in Nevada, or have any other relationship or "high level" contact with Nevada necessary to confer general jurisdiction on this (or any other) Nevada court.

**ii.  This Court Lacks Specific Jurisdiction over Steele, Hunter and Whataname**

Nor can plaintiffs establish that the Court may properly exercise specific jurisdiction over Steele, Hunter or Whataname.  Absent general jurisdiction, the exercise of specific personal jurisdiction is appropriate only if:  (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum; (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities; *and* (3) the exercise of jurisdiction over the defendant is reasonable.  *In re Western States*, 2009 U.S. Dist. LEXIS at *54; *Pebble Beach*, 453 F.3d at 1155.

Here, none of the alleged statements attributed to Steele, Hunter, or Whataname was expressly aimed at Nevada.  *See Pebble Beach*, 453 F.3d at 1156 (cautioning that "something more" – specifically "the express aiming requirement" – is necessary to establish specific personal

24

jurisdiction).  Rather, each of these defendants' statements was either (1) directed to the Hualapai

nation through a letter, *e.g.*, Compl. Ex. 8 (letter from Whatoname to "Members of the Hualapai

Tribe"); Ex. 27 (letter from Honga, Steele, Vaughn and Hunter to "Members of the Hualapai

Tribe"), or (2) Facebook posts discussing issues of concern to the Tribe, *e.g.*, *id.* Exs. 29-30.

These acts are not adequately related to Nevada to give rise to personal jurisdiction in this state.

*See Pebble Beach Co. v. Caddy*, 453 F.3d at 1156 (merely operating a website and using the name

"Pebble Beach" in the domain name held insufficient to establish the defendant's conduct was

"aimed" at California).

### iii.  Conclusion

In sum, this Court lacks personal jurisdiction, both general and specific, over Tribal

Council Defendants Steele, Hunter and Whatoname.  These defendants must be dismissed from

this action on this basis alone.

Moreover, the Court also lacks general personal jurisdiction over Tribal Council

Defendants Vaughn, Honga, and Counts.  While a handful of these defendants' statements to

Nevada media outlets may have been sufficiently "aimed at" Nevada, others clearly were not.

*E.g.*, Compl. Exs. 16-17 (statements made at Hualapai Community Meeting), Ex. 27 (letter to

"Members of the Hualapai Tribe"), Ex. 39 (letter in Tribal newspaper).  Accordingly, in the event

the Court finds that the Nevada-aimed statements attributed to Vaughn, Honga and Counts fail to

support plaintiffs' claims, the Court must dismiss all claims because any remaining non-Nevada

statements are insufficient for the Court to exercise personal jurisdiction.

### d.  <u>The Court Lacks Subject-Matter Jurisdiction</u>

#### i.  The Court Must Abstain from Exercising Jurisdiction Because Plaintiffs Have Not Exhausted Their Tribal Court Remedies

The Supreme Court and the Ninth Circuit have repeatedly held that a party must exhaust

tribal remedies before a federal court can exercise its jurisdiction.  *Nat'l Farmers Union Ins. Co. v.*

*Crow Tribe of Indians*, 471 U.S. 845, 857 (1985); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14-

16 (1987); *Marceau v. Blackfeet Housing Authority*, 540 F.3d 916, 920 (9th Cir. 2008) ("A district

court has no discretion to relieve a litigant from the duty to exhaust tribal remedies prior to

proceeding in federal court.")  This rule applies even if there are no proceedings pending in tribal

25

court.  *Id.* (citing *Sharber v. Spirit Mountain Gaming Inc.*, 343 F.3d 974, 976 (9th Cir. 2003) (per curiam).

There are four narrow exceptions to the exhaustion requirement where (1) the assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) the action is patently violative of express jurisdictional prohibitions; (3) exhaustion would be futile because of the lack of adequate opportunity to challenge the court's jurisdiction; or (4) it is plain that tribal jurisdiction is lacking.  *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 948 (9th Cir. 2008).  Plaintiffs have not alleged that any of these exceptions apply here, and indeed, none of them does.

> ### 1.  There can be no motivation to harass or bad faith because the tribal court has not asserted jurisdiction with respect to this action.

The Ninth Circuit has held that it is the tribal court, and not the opposing party, who has to be motivated by harassment or bad faith in order for this exception to apply.  *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, ___ F.3d ___, 2013 WL 1777060, *3 (9th Cir. 2013).

For example, in *Grand Canyon*, GCSD argued that it did not have to exhaust its tribal remedies because the defendant, SNW, had engaged in bad faith, and discussed "only incidentally … the actions of the Tribal Court."  *Id.* at *2.  On appeal, the Ninth Circuit held that "it must be the tribal court that acts in bad faith to exempt the party from exhausting available tribal court remedies" and held that GCSD had not alleged sufficient facts supporting bad faith on the part of the Hualapai Tribal Court.

So where, as here, this action is not even pending before the Tribal Court, the bad faith exception cannot apply.  *Id.*; *Navajo Nation v. Intermountain Steel Bldgs., Inc.*, 42 F. Supp. 2d 1222, 1227 (D.N.M. 1999) ("The first exception, which involves an assertion of tribal jurisdiction motivated by harassment or bad faith, is inapposite because no party has asserted tribal court jurisdiction."); *cf. Espil v. Sells*, 847 F. Supp. 752, 757 (D. Ariz. 1994) (finding that this exception cannot apply because the tribal court had not yet asserted subject-matter jurisdiction).

/ / /

/ / /

1

### 2. An action in the Hualapai Tribal Court would not patently violate express jurisdictional prohibitions because there is none.

2

3        There are no express jurisdictional prohibitions that could possibly apply here.  Indeed,

4   plaintiffs' claims against the Tribal Council Defendants fit squarely into the jurisdiction granted to

5   the Hualapai Tribal Court by the Hualapai Law and Order Code, relevant sections of which are

6   attached hereto as Ex. F.

7        The Hualapai Law and Order Code states that the Tribal Court has jurisdiction "over all

8   transitory claims in which the defendants may be served within the Tribal jurisdiction."[12]

9   Hualapai Law and Order Code § 2.2.  Transitory claims are claims that do not involve damages

10  caused to real property.  14D Charles Alan Wright, et al., Fed. Prac. & Proc. (3d ed.) § 3822

11  ("Tort claims not affecting land clearly are transitory . . . .").  Since defamation, business

12  disparagement and civil conspiracy do not affect land, they are transitory claims.  And since the

13  Tribal Council Defendants could all be served within Tribal jurisdiction, the Tribal Court has

14  jurisdiction over the claims against them.

15       Further, even if there were any question as to whether plaintiffs' claims fit within the

16  Tribal Court's jurisdiction as defined in the Hualapai Law and Order Code, that question should

17  be resolved by the Tribal Court in the first instance.  *See A & A Concrete, Inc. v. White Mountain*

18  *Apache Tribe*, 781 F.2d 1411, 1416 (9th Cir. 1986).

19       In *A & A Concrete*, a district court granted summary judgment for the White Mountain

20  Apache Tribe because the non-Indian plaintiffs had not exhausted their tribal remedies.  The

21  plaintiffs argued that the tribal court lacked jurisdiction because the Tribal Law and Order Code

22  granted jurisdiction over "all suits wherein an Indian or a member of the White Mountain Apache

23  Tribe is a party," and the Tribe itself was not an "Indian" or a "member of the . . . Tribe."  The

24  Ninth Circuit rejected the plaintiffs' argument and found that exhaustion was required because the

25  "[i]nterpretation of a tribal ordinance is one of the duties of a tribal court," and the plaintiffs'

26  arguments were "better addressed to the tribal court."  *Id.* (citing *R.J. Williams Co. v. Fort Belknap*

27  *Housing Authority*, 719 F.2d 979, 985 (9th Cir. 1983) (holding that question of whether Fort

28

---

[12] "Tribal jurisdiction" is defined in the Hualapai Law and Order Code as all lands within the boundaries of the Hualapai Indian Reservation as well as any lands outside the boundaries of the Reservation that are held by the Hualapai Tribe.  Hualapai Law and Order Code § 1.4.

27

Belknap Housing Authority is a "member" of the Fort Belknap Indian Community as that word is used within tribal court jurisdictional statute is a matter for the tribal court)).

Here, the Hualapai Law and Order Code plainly gives the Tribal Court jurisdiction over this case.  And, as in the case of *A & A Concrete*, any question about jurisdiction is for the Tribal Court to resolve.

### 3. Exhaustion would not be futile because the Tribal Court offers an adequate opportunity to challenge jurisdiction.

One of the plaintiffs (GCSD) has already tried to argue the futility exception in regard to the Hualapai Tribal Court, and the Ninth Circuit rejected the argument less than two months ago. *Grand Canyon*, 2013 WL 1777060, at *5.

As the Ninth Circuit pointed out in *Grand Canyon*, "this exception applies narrowly to only the most extreme cases," (*id*.), like when there is no functioning tribal court, *Krempel v. Prairie Island Indian Cmty.*, 125 F.3d 621, 622 (8th Cir. 1997), or when a two-year delay in the tribal court proceedings suggests that tribal remedies are unavailable, *Johnson v. Gila River Indian Cmty.*, 174 F.3d 1032, 1036 (9th Cir. 1999).  As the Ninth Circuit recognized in April of this year, this narrow exception does not apply to the Hualapai Tribal Court.  Nothing has changed in the past two months.

### 4. The Tribal Court has jurisdiction.

The fourth exception does not apply because, as discussed above, Hualapai Law and Order Code § 2.2 grants the Tribal Court jurisdiction over plaintiffs' claims against the Tribal Council Defendants.

Further, the Ninth Circuit has held that a Tribal Court can exercise jurisdiction over a non-Indian "in a civil matter between Indians and non-Indians that arises on an Indian reservation" or that "involve[es] reservation affairs."  *Stock West Corp. v. Taylor*, 964 F.2d 912, 919-20 (9th Cir. 1992).  Under this rule, if tribal jurisdiction is even "colorable" or "plausible," the Tribal Court gets to determine in the first instance whether it has jurisdiction.  *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008).

In *Stock West Corp.*, the Ninth Circuit found colorable questions regarding tribal court jurisdiction over the plaintiffs' tort claims where "the alleged tortious conduct . . . may have

28

commenced on the reservation."  964 F.2d 912, 919-20.  In that case, a non-Indian reservation attorney wrote an opinion letter to a bank to induce the bank to loan money to a non-Indian corporation for the construction of a sawmill on the reservation.  The corporation later sued the reservation attorney in federal court, alleging that the opinion letter contained misrepresentations that the corporation relied on to its detriment.  The district court dismissed the case because the corporation had not exhausted its tribal remedies.  *Id.* at 914-16.

On appeal, the Ninth Circuit stated that the plaintiff's "strongest argument is that abstention was improper because the letter opinion [that contained the alleged misrepresentation] was delivered to [the defendant] off the reservation."  *Id.* at 919.  Still, the Ninth Circuit rejected this argument because, among other things, "the opinion letter was researched and drafted on the . . . reservation";  the "letter was necessary to qualify the tribal corporation for a loan to build a sawmill on the reservation"; and the defendant, "although a non-Indian, was the Reservation Attorney . . . when he drafted the letter opinion."  *Id.*  In sum, the Ninth Circuit found that tribal jurisdiction was colorable because some parts of the tortious action occurred on the reservation, and the off-reservation actions were related to the reservation:

> Whether Colville Tribal law applies to a tort that involved certain acts committed on reservation land and other acts committed outside its territorial jurisdiction to induce another to perform a contract on tribal lands presents a colorable question that must be resolved in the first instance by Colville Tribal Courts.

*Id.* at 920.

In *Marceau*, Indian homeowners brought a contract claim against the Tribal Housing Authority in federal court, alleging that construction defects in their homes made the homes uninhabitable and led to health problems.  The district court dismissed the action, and the Ninth Circuit affirmed, holding that the homeowners had to exhaust their tribal remedies.  The Ninth Circuit found that tribal jurisdiction over the claim was "unquestionably colorable" because both plaintiffs and the defendant were tribal entities and because "at least some key events — the construction of the homes, for instance — occurred on tribal lands."  540 F.3d at 921.  For support, the Ninth Circuit pointed to its holding in *Stock West*, where "tribal court jurisdiction was

colorable where a *non-tribe* member sued a tribe in a contract and tort dispute and the key events *may* have taken place on tribal lands." *Id.*

Here, as in *Stock West*, plaintiffs' best argument is that some of the alleged defamatory statements were published by off-reservation news outlets, but that argument does not plainly preclude the Tribal Court's jurisdiction. Indeed, like *Stock West*, every other key event here points to the reservation:

- The Tribal Council Defendants likely made the alleged defamatory statements while on the reservation;

- Several of the statements were made in letters from the Tribal Council to members of the Tribe;

- All of the statements involved a dispute over a contract between some of the plaintiffs and a tribal corporation that was executed on tribal lands;

- The contract at the heart of the dispute was for the construction and management of an on-reservation tourist attraction;

- All of the alleged tortious actions at issue were committed by members of the Hualapai Tribal Council;

- As in Marceau, one of the plaintiffs is a member of the Hualapai Tribe, making this, at least in part, an intra-tribal dispute; and

- Plaintiffs GCSD and Jin, who are not members of the Hualapai Tribe, had entered into a consensual business relationship with the Tribe.

In sum, Tribal Court jurisdiction is even more colorable here than in *Stock West* and *Marceau*. Because Tribal Court jurisdiction is colorable, the fourth exception to the exhaustion requirement does not apply.

> 5. *The Court should also abstain so that the Tribal Court can determine in the first instance whether plaintiffs' claims are barred by sovereign immunity.*

Plaintiffs' complaint also presents colorable questions about whether the claims against the Tribal Council Defendants are barred by tribal sovereign immunity. This too is an issue for the Tribal Court in the first instance. *Sharber v. Spirit Mountain Gaming Inc.*, 343 F.3d 974, 976 (9th Cir. 2003) ("[T]he tribal exhaustion requirement also applies to issues of tribal sovereign immunity. Determining whether the tribe has waived immunity, or whether Congress has abrogated its immunity, requires a careful study of the application of tribal laws, and tribal court decisions." (internal citation and quotation marks omitted); *Stock West*, 964 F.2d at 920 (holding

30

that the district court abused its discretion by ruling on the issue of sovereign immunity before the tribal court could resolve the issue).

Thus, this Court has yet another compelling reason to abstain from exercising jurisdiction.

### 6.  *The policies underlying the exhaustion requirement apply here.*

The Supreme Court has stated three policies underlying the exhaustion requirement, and all three apply here.  First, requiring plaintiffs to exhaust their tribal remedies would encourage tribal self-government and self-determination by allowing the Tribal Court the first opportunity to evaluate the factual and legal bases for its jurisdiction over plaintiffs' claims.  *National Farmers*, 471 U.S. at 856-57.  Second, exhaustion of tribal remedies would promote the orderly administration of justice in the federal court by allowing a full record to be developed in the Hualapai Tribal Court before either the merits or any question concerning appropriate relief is addressed.  *Id.*  And third, if plaintiffs exhaust their tribal remedies, it will encourage the Hualapai Tribal Court to explain the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of the Tribal Court's expertise in the event of further judicial review.  *Id.*

### 7.  *Conclusion*

Because none of the exceptions to the exhaustion requirement applies, plaintiffs cannot be relieved of their obligation to exhaust their tribal remedies.  The Hualapai Tribal Court must be given the opportunity to determine its own jurisdiction and to rule on the issue of sovereign immunity.  Thus, the Court must either dismiss plaintiffs' claims against the Tribal Council Defendants or stay the proceedings.

### ii.  **The Court Lacks Subject-Matter Jurisdiction over Plaintiffs' Claims Because Members of the Tribal Council Enjoy Tribal Sovereign Immunity**

As discussed above, tribal sovereign immunity is an issue for the Hualapai Tribal Court, and this Court should abstain from exercising jurisdiction until the Tribal Court has had the opportunity to resolve the issue.  But if the Court decides that plaintiffs are not required to exhaust their tribal remedies, then plaintiffs' claims against the Tribal Council Defendants must be dismissed for lack of subject-matter jurisdiction because these Council members enjoy tribal sovereign immunity.  *Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007) ("Tribal sovereign immunity is a matter of subject matter jurisdiction, which may be

31

challenged by a motion to dismiss under Fed.R.Civ.P. 12(b)(1)."); *cf. Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989) ("Absent congressional or tribal consent to suit, state and federal courts have no jurisdiction over Indian tribes; only consent gives the courts the jurisdictional authority to adjudicate claims raised by or against tribal defendants.").

1.   *The Hualapai Tribe enjoys sovereign immunity under the Hualapai Constitution and federal law.*

Article XVI, Section 1 of the Constitution of the Hualapai Indian Tribe (the "Hualapai Constitution") guarantees that "the Tribe is immune from suit except to the extent that the Tribal Council expressly waives sovereign immunity."  This protection applies to members of the Tribal Council.  *Id.*

Further, federal law has long recognized that Indian tribes are sovereign political entities and are thus immune from suit unless Congress has expressly abrogated the immunity or the tribe has explicitly waived it.  *Kiowa Tribe v. Mfg. Techs., Inc.*, 436 U.S. 49, 58 (1998) ("As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.").

Here, Congress has not abrogated the Hualapai Tribe's immunity, and plaintiffs have not alleged that Tribe has expressly waived it, *Hwal'bay Ba:j Enterprises, Inc. v. Beattie*, App. Div. Case No. 2008-AP-007, at 5 (Hualapai App. Div. 2008) (holding that, once a tribe's sovereign immunity has been established, the plaintiff has the burden of establishing that its claim falls under an express waiver), nor has the Tribe done anything that could remotely be considered a waiver.  *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992) (holding that any purported waiver of sovereign immunity must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (finding that a waiver of tribal sovereign immunity "cannot be implied but must be unequivocally expressed").  The Hualapai Tribe is, consequently, unquestionably immune from suit.

/ / /

/ / /

32

1

*2. The Tribe's sovereign immunity extends to the Tribal Council Defendants if they acted in their official capacity and within the scope of their authority.*

2

3      Under federal law, the Hualapai Tribe's sovereign immunity extends to its tribal officials if

4   they are acting in their official capacity and within the scope of their authority. *Cook v. AVI*

5   *Casino Enterprises, Inc.*, 548 F.3d 718, 727 (9th Cir. 2008) ("Tribal sovereign immunity extends

6   to tribal officials when acting within their official capacity and within the scope of their authority.

7   . . . [A] plaintiff cannot circumvent tribal immunity by the simple expedient of naming an officer

8   of the tribe as a defendant, rather than the sovereign entity." (internal quotation marks omitted)).

9   The Tribal Council Defendants are thus immune from suit because they were all members of the

10   Hualapai Tribal Council when the alleged defamatory statements were made, and they were acting

11   in their official capacity and within the scope of their authority. *Id.*

12

*3. The Tribal Council Defendants acted in their official capacity.*

13      Plaintiffs did not allege that the Tribal Council Defendants failed to act in their official

14   capacity. Even if they had, however, they would be contradicting the evidence. In every instance

15   here, the Tribal Council Defendants were acting as members of the Hualapai Tribal Council.

16   Several of the alleged defamatory statements were made in letters to the Hualapai Tribe from the

17   Tribal Council or the Tribal Chairman or Chairwoman. *See* Compl. Exs. 8, 27, 37 & 39. In other

18   cases, news outlets quoted them because they were members of the Hualapai Tribal Council and

19   identified them as Tribal Council members. *See, e.g.*, *id.* Exs. 24-25. In every instance, the

20   statements were about issues that the Tribal Council was wrestling with. In no case was a

21   statement made by a Council member simply as an individual, divorced from his or her identity as

22   a member of the Tribal Council.[13]

23      The caption of plaintiffs' complaint describes the Tribal Council Defendants as both

24   "individuals and members of the Hualapai Tribal Council," suggesting that plaintiffs intended to

25   sue them in both their official and individual capacities. But "[i]n our circuit, the fact that a tribal

26

27

28

---

[13] There may be one exception. Exhibits 12 and 13 to the complaint contain statements made by Honga, who, in addition to being a member of the Tribal Council, was the Chief Operations Officer of Grand Canyon Resort Corporation, a tribal corporation. The statements were made in his role as COO. As a tribal employee, Honga enjoys sovereign immunity as well. Hualapai Constitution, Article XVI, Section 1(a) ("No tribal employee . . . acting within the scope of his duties or authority is subject to suit."); *Cook*, 548 F.3d at 727 ("We hold that tribal immunity protects tribal employees acting in their official capacity and within the scope of their authority.").

officer is sued in his individual capacity does not, without more, establish that he lacks the protection of tribal sovereign immunity." *Murgia v. Reed*, 338 Fed. Appx. 614, 616 (9th Cir. 2009). Rather, if "the [Tribal Council Defendants] were acting for the tribe within the scope of their authority, they are immune from Plaintiff[s'] suit regardless of whether the words 'individual capacity' appear on the complaint." *Id.* Since plaintiffs do not otherwise allege that the Tribal Council Defendants were acting in their individual capacity or any facts that could lead to that conclusion, the complaint alleges only actions taken by the Tribal Council Defendants in their official capacity.

                                 4. *The Tribal Council Defendants acted within the scope of their authority.*

Again, plaintiffs also did not allege that the Tribal Council Defendants exceeded the scope of their authority. Thus, their allegations are really against the Tribe and are barred by sovereign immunity. *Romanella v. Hayward*, 933 F. Supp. 163, 167 (D. Conn. 1996) *aff'd*, 114 F.3d 15 (2d Cir. 1997) ("Romanella does not allege that the individual defendants acted beyond the scope of their authority as tribal officers. Consequently, her action against the tribal officers is a suit against the tribe."); *Cook*, 548 F.3d at 727 (" [A] plaintiff cannot circumvent tribal immunity by the simple expedient of naming an officer of the tribe as a defendant, rather than the sovereign entity." (internal quotation marks omitted)).

Even if plaintiffs had so alleged, Article V, Section (dd) of the Hualapai Constitution gives the Tribal Council members authority to "take any and all actions necessary and proper for the exercise of [their] powers and duties . . . ." The Tribal Council clearly determined that the actions alleged in the complaint were necessary and proper for the exercise of the Council's powers and duties, including the duty to "represent the Tribe and act in all matters that concern the welfare of the Tribe." Hualapai Constitution, Article V, sec. (a). According to the memorandum from Scutari & Cieslak Public Relations, Inc., *see* Compl. Ex. 5, the Hualapai Tribe chose Scutari & Cieslak to help the Tribe tell its story. The memorandum also gives a timeline for that process, including

- Meet with Hualapai Tribal Council;
- Finalize key messages to be used in media interviews, speeches;

- ▪ Contact correspondent Marc Lacey with the New York Times (after initial meeting with Hualapai Tribal Council); and

- ▪ Assist Hualapai Tribal Council with improving communications to members.

The very evidence that plaintiffs cite to support their claims also demonstrates that the Tribal Council Defendants' statements to members of the Tribe and to the media were the result of concerted decisions made by the Tribal Council, showing that the Tribal Council Defendants acted in their official roles and within the scope of their authority to represent the Tribe and act in all matters that concern the welfare of the Tribe.  Hualapai Constitution, Art. V, Sections (a), (dd).

### 5.  Conclusion

The Tribal Council Defendants are immune from suit because they were acting in their official capacities and within the scope of their authority as members of the Tribal Council.  Thus, plaintiffs' claims against them must be dismissed for lack of subject-matter jurisdiction.

## IV.  CONCLUSION

For the reasons set forth above, the Tribal Council Defendants request that plaintiffs' complaint be dismissed or that this Court abstain from exercising jurisdiction based on principles of comity and exhaustion of remedies.

RESPECTFULLY SUBMITTED this 7th day of June, 2013.

LEWIS and ROCA LLP

By: /s/Thomas G. Ryan_____
Thomas G. Ryan
Nevada Bar No. 9378
Lindsay Demaree
Nevada Bar No. 11949
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
*Attorneys for Defendants*
*Ruby Steele, Candida Hunter, Waylon Honga*
*Charles Vaughn, Sr., Sherry Counts and*
*Wilfred Whatoname, Sr.*

1

2

## **CERTIFICATE OF SERVICE**

3       I certify that on June 7, 2013, I electronically transmitted the attached document to the

4   Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing

5   to the CM/ECF registrants.

6   Mark Tratos

7   Donald L. Prunty
    GREENBERG TRAURIG

8   3773 Howard Hughes Parkway
    Suite 400 North

9   Las Vegas, NV  89169

10

    Nicholas M. Wieczorek

11  Suzette P. Ang
    MORRIS, POLICH & PURDY LLP

12  500 South Rancho Drive, Suite 17
    Las Vegas, Nevada 89106

13

14
                                    _/s/Jessie M. Helm_____
15                                  An Employee of Lewis and Roca LLP

16

17

18

19

20

21

22

23

24

25

26

27

28

36