1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                        **DISTRICT OF NEVADA**
10

11   Grand Canyon Skywalk Development, LLC, et         Case No.: 2:13-cv-596-JAD-GWF
12   al.,

13                    Plaintiffs,

14                    v.                               **Order Denying Defendants John**
                                                       **Cieslak, Nicolas Peter Scutari and**
15   David John Cieslak, Nicholas Scutari, and        **Scutari & Cieslak Public Relations,**
     Scutari & Cieslak Public Relations, Inc.,         **Inc.'s Motion for Partial Dismissal**
16                                                      **[Doc. 19] and Overruling as Moot**
                    Defendants.                        **Plaintiffs' Objections to Order Re:**
17                                                      **Motion to Stay Discovery [Doc. 60]**

18

19          This once-complex business tort case previously involving tribal-sovereignty

20   arguments now comes before this Court on a simple motion to dismiss and objections to

21   Magistrate Judge Foley's Order denying the defendant's request for a stay pending resolution

22   of this motion to dismiss.  Docs. 19, 60.  Defendants, an advertising agency and its two

23   principals charged with promulgating a smear campaign that defamed the Plaintiffs, seek

24   dismissal of Plaintiffs' defamation claims on statute-of-limitations grounds, for failure to

25   state a viable claim, and under Nevada's anti-SLAPP statutes.  Finding that the Plaintiffs'

26   allegations survive each of these dismissal arguments, the Court denies the motion to dismiss

27   and overrules as moot Defendants' objections to Judge Foley's order denying the stay during

28   the pendency of this now-resolved motion to dismiss.

                                            1

**Background**[1]

This case centers on the Grand Canyon Skywalk, a tourist attraction built in the Grand Canyon on land owned by the Hualapai Indian Nation in northern Arizona.  Doc. 1.  The project was originally conceived by Plaintiff David Jin and his company, Grand Canyon Skywalk Development, LLC ("GCSD").  Beginning in 1996, Jin inked a series of agreements with the Hualapai Tribe to develop the project, market it to tourists, and share the revenue.  Doc. 1 at 4.  On December 31, 2003, GCSD and a tribal-controlled entity, Sa' Nyu Wa, Inc., ("SNW") entered into a Development and Management Agreement that "provided for, among other things, the construction, management, and operation of the Skywalk and related facilities solely and exclusively by GCSD."  *Id.* at 4-5.  Plaintiffs claim that under the 2003 agreement, SNW was responsible for providing "the necessary utilities and infrastructure to the Skywalk site not only to allow construction to take place, but also to provide amenities to the public."  *Id.* at 8.  GCSD alleges that although it began constructing the Skywalk in 2006, the Tribe failed to deliver power, water, or wastewater to the project site, frustrating GCSD's efforts to construct a visitors' center as it was obligated to do under the 2003 Agreement; today, the visitor's center "stands an empty although nearly constructed shell."  *Id.* at 8.  Plaintiffs claim that the Tribe could have secured up to $30 million in federal funding to assist in delivering utilities to the site, but the Tribe refused to do so.  *Id.* at 9.

Plaintiffs further allege that in 2011, following disputes about allocation of tourist revenue, "some of the defendants began conspiring to invent a justification to take GCSD and Jin's contractual rights, and decided to claim that it was the responsibility of GCSD and Jin to put in all of the infrastructure necessary for . . . the Skywalk."  *Id.* at 8-9.  Members of the Hualapai Tribal Council retained a Phoenix-based private public relations firm, Defendant Scutari & Cieslak Public Relations, Inc., whose principals were Defendants John Cieslak, Nicolas Peter Scutari, and during the February or March 2011 "time period," Defendants devised a detailed strategy to blame the failure on Jin and GCSD, made false

---

[1] This factual description is intended only for general background and not intended as any finding of fact.

statements directly to the media in a memorandum ultimately leaked to the press, and ghostwrote a letter disparaging Plaintiffs to the Hualapi Tribe. *See id.* at 10-23. Plaintiffs contend that these false statements have damaged their business reputation nationally and globally. *Id.* at 23.

Plaintiffs originally sued Scutari & Cieslak and several members of the Hualapai Tribal Council for defamation, business disparagement, and civil conspiracy, but the tribal defendants were voluntarily dismissed, leaving only the advertising-agency defendants. *See* Docs. 63, 64. These remaining defendants move for dismissal of Plaintiffs' claims, arguing that their statements are not defamatory, some of them were communicated outside the two-year statute of limitations, and, alternatively, the whole case should be dismissed as an improper SLAPP suit. Doc. 17.[2]

Defendants also moved to stay discovery pending resolution of the motion to dismiss, Doc. 48, which Magistrate Judge Foley denied. Doc. 59. Defendants now object to that ruling and move this Court to reconsider it. Doc. 60. The Court denies both the motion to dismiss and the motion for reconsideration, permitting this case to now move forward.

## Discussion

**A.    Motion to Dismiss [Doc. 17]**

Federal Rule of Civil Procedure 8(a) supplies the standard for pleadings in a federal cause of action and states, "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought."[3] A district court may dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).[4]

---

[2] Defendants originally challenged venue based on the tribal nature of this case but conceded at the April 11, 2014, hearing that the dismissal of the tribal defendants mooted that argument.

[3] Fed. R. Civ. Proc. 8(a).

[4] Fed. R. Civ. Proc. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[5]  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."[6] The Court is also "not bound to accept as true a legal conclusion couched as a factual allegation."[7]  To state a "plausible" claim for relief, the plaintiff must "plead[] factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[8]  This requires a plaintiff to state "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the allegations charged.[9]

**1.    Defendants have not shown that the statute of limitations bars claims based on any statements in the complaint.**

Defendants argue that the memorandum, issued in February or March 2011, was "leaked" prior to April 8, 2011, such that Plaintiffs "discovered" it more than two years before they filed this suit on April 8, 2013.  Doc. 17 at 13.  Plaintiffs argue they need to conduct discovery into when the Memorandum was actually circulated to resolve this issue. *See* Doc. 22 at 21.

The statute of limitations for defamation in Nevada action is two years.[10]  Typically a cause of action does not accrue until the party discovers it.[11]  Although the April 8, 2013,

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[7] *Id.* (quoting *Papsan v. Allain*, 478 U.S. 265, 286 (1986)).

[8] *Iqbal*, 556 U.S. at 678-79.

[9] *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).

[10] NRS § 11.190(4); *see Lund v. Eight Judicial District Court of State, ex rel. County of Clark*, 255 P.3d 280, 285 n.6 (Nev. 2011).

[11] *Petersen v. Bruen*, 792 P.2d 18, 20 (1990); *Lahren v. Nevada System of Higher Education*, 238 P.3d 831, 2008 WL 6124733, at *2 (Nev. Sept. 18, 2008) (unpublished disposition) (citing *Petersen* and applying the discovery rule to a defamation cause of action).

4

complaint alleges the memorandum was "from" the February or March "timeframe," it does not specify when in early 2011 the memorandum was leaked to the public or when the Plaintiffs discovered that publication, thus triggering the statute of limitations.  Doc. 1 at 11 &n.3.  Defendants offer no evidence to negate the plausible inferences from the well-pled facts that either: (1) the memorandum was leaked sometime after April 8, 2011 (two years before this suit commenced); or (2) even if it was leaked before April 8, 2011, Plaintiffs did not learn of it until after that date, so their claim is still timely.  Defendants' motion to dismiss the defamation claim as time barred is thus denied.

### 2.      A reasonable juror could find that the statements were either untrue or did not constitute opinion.

Defendants also contend that many of the statements in question are either true or ones of opinion, pointing in particular to paragraphs 70-78, 95-101, and 112-16.  Doc. 17 at 10.  They also claim that even if the statements are not true in every respect, minor inaccuracies can be overlooked, and in context a reader would not take the statements to be false.  *Id.*  In response, Plaintiffs argue that Defendants admitted that they engaged in a media campaign, and "the evidence attached as exhibits to the complaint undisputedly show the statements made by the Defendants in Las Vegas and elsewhere."  Doc. 22 at 7.  They also claim that they need to conduct discovery into the truth or falsity of the statements.  Doc. 22 at 22-23.

"An action for defamation requires the plaintiff to prove four elements: "(1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."[12]  "As a general rule, only assertions of fact, not opinion, can be defamatory.  However, expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false."[13]  "The rule for

---

[12] *Clark County School District v. Virtual Education Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (quotations omitted).

[13] *K-Mart Corp. v. Washington*, 866 P.2d 274, 282 (Nev. 1993), *receded from on other grounds*, 114 P.3d 277 (Nev. 2005).

distinguishing an opinion from an assertion of fact is whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact."[14]  "Words must be reviewed in their entirety and in context to determine whether they are susceptible to defamatory meaning."[15]  Where a statement is capable of different constructions, one of which is defamatory, the question is reserved for the jury.[16]

The Court finds that at least some of the alleged statements may be reasonably construed as defamatory.  If Plaintiffs' allegations in the Complaint about the division of labor in the 2003 Agreement between GCSD and SNW are true, then SNW and the Tribe had the "responsibility . . . to provide necessary utilities and infrastructure to the Skywalk site not only to allow construction to take place, but also to provide amenities to the public."  Doc. 1 at 8.  However, Scutari & Cieslak's memorandum, which was allegedly published to the Tribe, states that "Jin agreed to complete certain critical elements of the Skywalk - including water, sewer, and electricity."  Doc. 1 at 11.  Later, the memorandum states, "Jin has failed to follow through on his contractual obligations."  *Id.*  Completing "water, sewer, and electricity" work implies, at the very least, access to these items.  A reasonable person reading the memorandum's statements in context could come to the conclusion that Jin owed a duty under the contract to provide utilities to the Skywalk Visitors center, failed to do so, and as a result broke his promise to the Tribe and contributed to the deleterious condition of what was to be a large-scale and profitable attraction—all factual assertions that Plaintiffs contend are false.  Thus, the complaint sufficiently states a claim that survives dismissal under Rule 12(b)(6).

### 3.    The communications were not privileged or made during the course of ongoing litigation.

Defendants also allege that the statements are privileged because they were provided to Defendants' client for review on a "privileged and confidential" basis, which makes them

---

[14] *Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2001).

[15] *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 463 (Nev. 1993).

[16] *Posadas v. City of Reno*, 851 P.2d 438, 442 (1993).

privileged work product—a transmission that cannot constitute defamation.  Doc. 17 at 12.
Defendants cite no authority for the proposition for such an advertiser's "privilege," and
Nevada law appears to lack any.

Nevada law does recognizes some professional privileges, but the one urged by
Defendants is not one of them.  In *Cucinotta v. Deloitte & Touche, L.L.P.*, Nevada recently
adopted a narrow exception to absolute privilege for professionals who divulge information
to a client under obligations owed under the law.[17]  The *Cucinotta* court expressed its
concern that "unfiltered speech to unintended persons could instigate malicious conduct that
would go unpunished."[18]  Thus, it extended this absolute privilege only to communications
"(1) . . . made pursuant to lawful process, and (2) . . . made to a qualified person."[19]  There is
no indication that Defendants' statements were made pursuant to "lawful process," i.e.,
disclosures required under a federal or state statutory or regulatory scheme,[20] so this
exception offers no protection from defamation liability.

Additionally, the memorandum references the Tribe's "planned legal action against
David Jin," which is characterized as "a significant public relations opportunity."  Doc. 1 at
11.  Defendants do not assert privilege on the basis that the statement relates to ongoing
litigation, but alluded to this privilege during the course of an oral argument on the motion.
They claimed that given Jin and the Tribe's legal difficulties, "charged" statements were
normal.

But the litigation privilege also fails to shield Defendants from defamation liability
here.  Nevada has adopted the "long-standing common law rule that communications [made]
in the course of judicial proceedings are absolutely privileged," even if those statements are

---

[17] *See Cucinotta v. Deloitte & Touche, L.L.P.*, 302 P.3d 1099, 1101-02 (Nev. 2013).

[18] *Id.* at 1102.

[19] *Id.* (citing Restatement (Second) of Torts § 592A (1977)).

[20] *See id.*

Case 2:13-cv-00596-GWF   Document 66   Filed 05/21/14   Page 8 of 10

false.[21]  This privilege is broad and should be construed in favor of application.[22]  Although the Nevada Supreme Court has extended this "ongoing litigation" privilege to a non-attorney who responded to a communication to another non-attorney regarding a mater which one party threatened to "turn over" to the company's legal department,[23] to qualify for this privilege, "(1) a judicial proceeding must be contemplated in good faith and under serious consideration, and (2) the communication must be related to the litigation."[24]

Even if Defendants and the Tribe were reasonably aware that the Tribe sought to instigate legal proceedings against Jin at the time the statements in the memorandum were made, Defendants were not involved as parties in the underlying contractual dispute between the Hualapai Tribe and Jin.  According to the Complaint, they were "hired guns" brought in to help conduct a smear campaign.  Thus, Defendants cannot claim the protection of Nevada's litigation privilege as a basis to dismiss this claim.

### 4. Defendants' anti-SLAPP argument fails because the statements made in the memorandum were not made in a public forum.

In the alternative, Defendants urge dismissal under Nevada's anti-SLAPP statutes, arguing that Plaintiffs' suit was filed to frustrate Defendants' attempt to "participate in the democratic process."  Doc. 17 at 14.  Plaintiffs respond that their statements—at least at paragraphs 74-78, 95-99, 101, and 112-16—were designed to bring attention to the state of the Skywalk project, and "did nothing more than bring attention to the ongoing problems the Tribe was facing with respect to the development and maintenance" of the project.  *Id.* at 15. They contend that dismissal on the basis of the anti-SLAPP statute would be premature because there is not enough evidence to conclude that their claims are motivative in this impermissible way.  Doc. 22 at 20.

---

[21] *Circus Circus Hotels v. Witherspoon*, 657 P.2d 101, 104 (1983).

[22] *Fink v. Oshins*, 49 P.3d 640, 644 (Nev. 2002).

[23] *See Clark County*, 213 P.3d at 503-04.

[24] *Id.* at 503.

"A SLAPP suit is a meritless lawsuit that a party initiates primarily to chill a defendant's exercise of his or her First Amendment free speech rights."[25]  A SLAPP Plaintiff typically seeks "to obtain a financial advantage over one's adversary by increasing litigation costs until the adversary's case is weakened or abandoned."[26]  The current version of NRS § 41.660 permits dismissal of "an action is brought against a person based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern."[27]  "'Good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern' means any: . . . .  Communication made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood."[28]

Because Defendants claim that the memorandum statements were designed to be "privileged and confidential," they were not clearly made in a "public forum" such that they were intended as a "good faith communication in furtherance of the right to petition." Defendant Cieslak's April 13, 2011, interview with ABC15.com might meet the "public forum" exception, but the Court need not determine (1) whether Cieslak's statement was "truthful or is made without knowledge of its falsehood," or (2) whether updates on the Grand Canyon Skywalk were "issue[s] of public interest," because at least some of Defendants' statements would not qualify for protection under the anti-SLAPP law.  The Court will not engage in piecemeal consideration of every statement Defendants are alleged to have made to determine whether each qualifies for exclusion under Nevada's anti-SLAPP

---

[25] *Stubbs v. Strickland*, 297 P.3d 326, 329 (Nev. 2013) (citing *John v. Douglas County School District*, 219 P.3d 1276, 1280 (Nev. 2009)).

[26] *John*, 219 P.3d at 1280.

[27] NRS § 41.660(1).  This version of the statute took effect on September 30, 2013, after this suit had been filed and all relevant events took place.  However, at oral argument on the motion the parties did not argue that the new amendments impacted disposition of the motion, and the Court applies the same.  *See Jensen v. City of Boulder City*, 2014 WL 495265, at *2-3 (Nev. Jan. 24, 2014) (unpublished decision) (reversing trial court in light of intervening changes to anti-SLAPP statute).

[28] NRS § 41.637.

9

1  law.  For purposes of this motion, it is sufficient that Plaintiffs have stated a plausible claim

2  based upon some statements to which Nevada's anti-SLAPP dismissal provisions do not

3  apply.

4  **B.      Defendants' Objections to Magistrate Judge Foley's Order [Doc. 60]**

5          After they filed their motion to dismiss, Defendants moved to stay discovery pending

6  resolution of the motion to dismiss.  Doc. 48.  Magistrate Judge Foley denied the stay

7  request, Doc. 59, and Defendants then moved in this Court to reconsider Judge Foley's

8  Order.  Doc. 60.  As the motion to dismiss is denied by this Order, there is no pending

9  motion necessitating a stay.  The motion for reconsideration is therefore denied as moot.

**Conclusion**

10         Accordingly, and based on the foregoing reasons,

11        **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Doc. 17] is

12 **DENIED**.

13        **IT IS FURTHER ORDERED** that Plaintiffs' Objections to Magistrate Judge Foley's

14 Order [Doc. 60] are overruled and their request for reconsideration is **DENIED** as moot.

15        DATED: May 21, 2014.

16

17                                             _____

18                                             JENNIFER A. DORSEY
                                               UNITED STATES DISTRICT JUDGE
19

20

21

22

23

24

25

26

27

28