1
2
3
4   **UNITED STATES DISTRICT COURT**
5   **DISTRICT OF NEVADA**
6
7   GRAND CANYON SKYWALK DEVELOPMENT )
    LLC, *et al.*,                        )
8                                         )
           Plaintiffs,                    )       Case No. 2:13-cv-00596-JAD-GWF
9                                         )
    vs.                                   )       <u>**ORDER, OR IN THE**</u>
10                                        )       <u>**ALTERNATIVE, FINDINGS AND**</u>
    DAVID JOHN CIESLAK, NICHOLAS SCUTARI )        <u>**RECOMMENDATION**</u>
11  and SCUTARI & CIESLAK PUBLIC          )
    RELATIONS, INC.                       )       Motion for Leave to Amend Answer
12                                        )       and Assert Counterclaim (#91)
           Defendants.                    )
13  _____)

14          This matter is before the Court on Defendants John Cieslak, Nicholas Peter Scutari and

15  Scutari & Cieslak Public Relations, Inc.'s Motion for Leave to Amend Answer and Assert

16  Counterclaims (#91), filed on February 17, 2015.  Plaintiffs filed their Opposition (#100) on March

17  6, 2015 and Defendants filed their Reply (#102) on March 16, 2015.  The Court conducted a

18  hearing in this matter on March 23, 2015.

19                                      **BACKGROUND**

20          Plaintiffs filed their Complaint (#1) in this action on April 8, 2013.  The complaint named

21  as defendants individual members of the Hualapai Indian Tribe and/or Hualapai Tribal

22  Council–Ruby Steele, Candida Hunter, Waylon Honga, Charles Vaughn, Sr., Sherry Counts,

23  Wilfred Whatoname, Sr., and Patricia Cesspouch (hereinafter referred to as the "individual Tribal

24  Defendants").  The complaint also named as defendants David John Cieslak, Nicholas Peter

25  Scutari, and Scutari & Cieslak Public Relations, Inc. (hereinafter referred to as the "Scutari

26  Defendants").  This action arises out of a dispute between the Plaintiffs and the Hualapai Tribal

27  Council regarding the development, construction and operation of the Grand Canyon Skywalk

28  which is located on tribal lands on the western edge of the Grand Canyon.  Plaintiffs allege that the

Defendants conspired to conduct a public relations/news media campaign to falsely accuse the Plaintiffs of having breached their contracts with the Hualapai Tribe and its entities; and to portray Plaintiffs as disreputable business persons.  The alleged goal of this campaign was to build support among tribe members and others for the termination of Plaintiffs' contractual rights.  Plaintiffs allege, in particular, that "[t]he Tribal Defendants, or others acting on the Tribe's behalf, hired the Scutari Defendants to formulate a public relations campaign against Plaintiffs." *Complaint (#1)*, ¶64.  Plaintiffs allege that the Scutari Defendants prepared a written "communications strategy" designed to ruin Plaintiff David Jin's reputation and turn public opinion against Jin, GCSD and its employees.  ¶¶ 66-67.  In accordance with this strategy, the Scutari Defendants and the individual Tribal Defendants allegedly published defamatory statements to third parties including news reporters and tribal members.  ¶¶ 69-80. 87-89, 95-104, 109, 111, 118-122.  The Complaint alleges three causes of action against Defendants:  Defamation (First Claim for Relief); Business Disparagement (Second Claim for Relief); and Civil Conspiracy (Third Claim for Relief).

In April 2014, the Plaintiffs settled their claims with the individual Tribal Defendants and voluntarily dismissed them from this action.  *See Notices of Voluntary Dismissal (#63, #64)*. Plaintiffs' counsel represents that the settlement with the individual Tribal Defendants occurred during a mediation conference between the Plaintiffs and the Hualapai Tribe or Tribal Council regarding the underlying contractual and eminent domain disputes between those parties.  He further represents that the Hualapai Tribe or Tribal Council demanded that Plaintiffs dismiss their claims against the individual Tribal Defendants in this action as part of the settlement.

Defendants seek to amend their answer to allege a counterclaim against the Plaintiffs.  The proposed counterclaim alleges two causes of action: abuse of process and intentional interference with prospective economic relations.  Plaintiffs oppose the motion on the grounds that it is untimely, will cause undue prejudice to them and that the proposed counterclaim would be futile because neither cause of action states a legally viable claim for relief.[1]

---

[1] On February 17, 2015, Plaintiffs filed a motion for leave to file a supplemental complaint to allege claims for defamatory or disparaging statements made by Defendants since the complaint was filed. Plaintiffs also intend to conduct further discovery to determine if Defendants published other defamatory or

1

**DISCUSSION**

2    Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that where leave of court is

3 required to amend a pleading, leave should be freely given when justice so requires.  Within this

4 liberal standard, the court has the discretion to deny leave to amend based on consideration of the

5 following factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment

6 and whether the party has previously amended its pleading.  *Johnson v. Buckley*, 356 F.3d 1067,

7 1077 (9th Cir. 2004), citing *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003).  "'Futility alone

8 can justify the denial of a motion to amend.'"  *Id.  See also Georgiou Studio, Inc. v. Boulevard*

9 *Invest, LLC*, 663 F.Supp.2d 973, 977-78 (D.Nev. 2009).

10    There is a split of authority as to whether a motion to amend a pleading is a dispositive

11 motion under 28 U.S.C. § 636(b)(1)(A), particularly where the opposition to the motion is based on

12 the alleged futility of the amendment.  The Seventh Circuit held in *Hall v. Norfolk Southern*

13 *Railway Co.*, 469 F.3d 590, 594-95 (7th Cir. 2006) that a motion for leave to amend a pleading is a

14 non-dispositive motion.  In *Allendale Mutual Ins. Co. v. Rutherford*, 178 F.R.D. 1, 2 (D. Me.

15 1998), however, the district court held that the magistrate judge's order denying defendant's motion

16 to amend its answer was a dispositive ruling because it eliminated a potential defense.  District

17 courts within the Ninth Circuit also disagree on this issue.  *See JJCO, Inc. v. Isuzu Motors America,*

18 *Inc.*, 2009 WL 3818247 (D. Hawaii 2009) (magistrate judge's order denying leave to amend

19 complaint was non-dispositive); *Gossett v. Stewart*, 2009 WL 3379018 (D. Ariz. 2009) (denial of

20 motion for leave to amend was treated as dispositive because the denial would effectively dismiss

21 four of plaintiff's proposed causes of action).  A magistrate judge's decision on a non-dispositive

22 motion may be reversed only if it is clearly erroneous or contrary to law.  A magistrate judge's

23 recommendation on a dispositive motion, however, is subject to *de novo* review by the district

24 judge.  If an objection is filed to this order and the district judge determines that it is dispositive in

25 nature, then the undersigned requests that this decision be treated as a recommendation made

26 ───────────────

27 disparaging statements of which they are presently unaware.  Plaintiffs indicate that they will move to
further supplement their complaint if such statements are discovered.  The Court granted Plaintiff's motion
28 on March 23, 2015.  Discovery in this action closes on July 2, 2015.

pursuant to 28 U.S.C. § 636(b)(1)(B).

The Scutari Defendants moved for leave to amend their answer and assert a counterclaim prior to the scheduling order deadline for filing motions to amend pleadings.  The motion is therefore subject to the limited constraints placed on motions for leave to amend under Rule 15(a).  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006).  Plaintiffs argue that the Scutari Defendants have been guilty of unreasonable delay in moving for leave to assert a counterclaim and that Plaintiffs will be prejudiced if the counterclaim is permitted.  In evaluating undue delay, the court considers whether the moving party knew or should have known of the facts and theories raised by the amendment in the original pleading or at some other time prior to when he moved to amend.  *AmerisourceBergen Corp.*, 465 F.3d at 953, citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).  The Ninth Circuit has held that an eight month delay in seeking leave to amend is unreasonable.  *Id.*, citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991).  In *AmerisourceBergen Corp.*, the court found that the plaintiff/counter-defendant's fifteen month delay in moving for leave to amend was unreasonable.  The district court in *Fresno Unified School District v. K.U. ex rel. A.D.U.*, 980 F.Supp.2d 1160 (E.D.Cal. 2013), citing *Bowles v Reade*, 198 F.3d 752, 758 (9th Cir. 1999), states that delay alone is generally insufficient justification for denying a motion to amend unless the court also specifically finds prejudice to the opposing party, bad faith of the moving party or futility of amendment.  In *AmerisourceBergen Corp.*, the court found that defendant would be prejudiced by the increased costs and time that would be required to litigate the plaintiff's new legal theories.

In this case, the district judge denied the Scutari Defendants' motion to dismiss on May 21, 2014.  The Scutari Defendants did not answer the complaint until October 16, 2014.  *Answer/Third Party Complaint (#70).*  The reason for the Defendants' nearly five months delay in filing their answer has not been clearly explained to the Court.  The Scutari Defendants appear to have been in possession of all facts supporting their proposed counterclaim at the time they filed their answer.  They have therefore been guilty of undue delay in moving to assert the counterclaim.  Because the Court has granted Plaintiffs leave to file their supplemental complaint on which further discovery will be required, however, Plaintiffs have not shown that they will be unduly prejudiced if the

4

1   proposed the counterclaim is permitted.  It does not appear that any discovery will have to be

2   repeated if the counterclaim is allowed.  Although discovery will be needed to explore the Scutari

3   Defendants' alleged damages, it reasonably appears that this discovery could be conducted within

4   the remaining time for discovery.

5         Plaintiffs, however, also oppose the proposed counterclaim on the grounds that it would be

6   futile.  "[A] proposed amendment is futile only if no set of facts can be proved under the

7   amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller*

8   *v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), citing *Baker v. Pacific Far East Lines,*

9   *Inc.*, 451 F.Supp. 84, 89 (N.D.Cal. 1978) and 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4] (2d

10  ed. 1974).  *See also Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997).  The

11  Court must therefore consider whether the Scutari Defendant's proposed claims for abuse of

12  process or  intentional interference with prospective economic relations fail to allege viable claims

13  against the Plaintiffs.

14        **A.    Abuse of Process Claim**

15        The Scutari Defendants seek to allege a claim for abuse of process against the Plaintiffs

16  based on their conduct in this lawsuit.  Two elements are required to establish the tort of abuse of

17  process: (1) an ulterior purpose by the defendant other than resolving a legal dispute, and (2) a

18  willful act in the use of legal process not proper in the regular conduct of the proceeding.  *Posadas*

19  *v. City of Reno*, 109 Nev. 448, 851 P.2d 438, 457 (1993); *Kovacs v. Acosta*, 106 Nev. 57, 787 P.2d

20  368, 369 (1990), citing *Bull v. McCuskey*, 96 Nev. 706, 615 P.2d 957 (1980) and *Nevada Credit*

21  *Rating Bureau v. Williams*, 88 Nev. 601, 503 P.2d 9 (1972).  Under Nevada law, the mere filing of

22  a complaint is insufficient to establish the tort of abuse of process.  *Laxalt v. McClatchy*, 622

23  F.Supp. 737, 751-52 (D.Nev. 1985); *Fagin v. Doby George, LLC*, 2011 WL 3425632, *3 (D. Nev.

24  2011); and *Archway Ins. Serv., LLC v. Harris*, 2014 WL 643785, *9 (D.Nev. 2014).[2]

25

26        [2] Nevada does not recognize a common law cause of action for malicious prosecution arising out of
    an underlying civil action.  *Lamantia v. Redisi*, 118 Nev. 27, 30-31, 38 P.3d 877, 879-880 (2002).  *See also*

27  *Raphaelson v. Ashtonwood Stud Associates, L.P.*, 2009 WL 2382765, *2-3 (D.Nev. 2009) (declining to
    recognize a tort of "Wrongful Use of Civil Proceedings" pursuant to Restatement (Second) of Torts §674

28  where no Nevada case has recognized the tort).

In *Bull v. McCuskey*, the Nevada Supreme Court affirmed a judgment for abuse of process against an attorney who filed and prosecuted a medical malpractice claim against a doctor, knowing that there was no basis for the claim. In affirming the judgment, the court stated:

> In the case at hand, it is asserted that the process (complaint and summons) charging Dr. McCuskey with malpractice was misused for the ulterior purpose of coercing a nuisance settlement. In considering all the evidence presented, it was permissible for the jury to conclude that attorney Bull had utilized an alleged claim for malpractice for the ulterior purpose of coercing a nuisance settlement. His offer to settle the case for the minimal sum of $750 when considered in the light of his failure adequately to investigate before deciding to file suit and the total absence of essential expert evidence, supports such a conclusion by the jury and we may not set it aside.

96 Nev. at 709, 615 P.2d at 960.

*Laxalt v. McClatchy* explained and distinguished *Bull* as follows:

> The Nevada court clearly indicated the attorney *abused* the process available to him by offering to settle the case for a minimal sum and by failing to present proper evidence at trial. *Id.* It was the actions which the lawyer took (or failed to take) *after* the filing of the complaint which constituted the abuse of process, and not the filing of the complaint itself, which constituted the tort in the *Bull* court's estimation.

622 F.Supp. at 752.

In their proposed counterclaim for abuse of process, the Scutari Defendants allege that Plaintiffs (Counter-Defendants) "acted with malice and conscious disregard for the rights of [the Scutari Defendants] in their ulterior purpose of misusing the legal process to cause financial harm to these Counter-Claimants by initiating a lawsuit against the owners of said incorporation individually." *Proposed Counterclaim (#91-2)*, ¶ 11. This allegation is insufficient to state a claim for abuse of process since it is premised on the mere filing of the complaint. *Laxalt v. McClatchy, supra.*

The Scutari Defendants further allege that Plaintiffs (Counter-Defendants) committed an abuse of process "by engaging and settling with the Hualapai Tribe and excluding Counter-Claimants from those settlement negotiations even though the Counter-Defendants knew of the indemnity provision in a legally binding contract between [the Scutari Defendants] and the Hualapai Tribe." ¶ 12. This paragraph seeks to assert an abuse of process claim akin to that in *Bull*

6

*v. McCuskey* by alleging that the Plaintiffs misused the settlement negotiation "process" for the ulterior purpose of harming the Scutari Defendants. In evaluating this allegation, the Court bears in mind that it is applying the standard under Rule 12(b)(6) as to whether the proposed counterclaim alleges some facts that would constitute a valid claim for relief.

As *Bull* indicates, an abuse of process claim can be predicated on the misuse of the settlement negotiation process combined with other improper or unreasonable litigation conduct–in that case failing to do anything during the lawsuit to develop a legitimate claim and then making a nuisance demand for settlement. Settlement, however, is a voluntary method for resolving a lawsuit. A party cannot be required by the court to settle a case against its wishes. *Kothe v. Smith*, 771 F.2d 667, 669 (2d Cir. 1990); *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1128 (3rd. Cir. 1990); and *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992); *but see Guillory v. Domtar Industries Inc.*, 95 F.3d 1320, 1335 n. 13 (5th Cir. 1996) (stating that a party may be sanctioned for refusing to make a bonafide offer at a court mandated settlement conference pursuant to Fed.R.Civ.Pro. 16).[3] The Court has not been provided with any legal authority suggesting that it is improper for a plaintiff to separately settle with one defendant, while continuing to pursue the claim against a co-defendant. The mere allegation that a party failed to include the claimant in voluntary settlement negotiations with another party to the lawsuit, even where the claimant was entitled to be indemnified by that other party, does not constitute "the use of legal process not proper in the regular conduct of the proceeding." The proposed counterclaim, therefore, does not allege sufficient facts to support a counterclaim for abuse of process against the Plaintiffs.

**B.    Intentional Interference With Prospective Economic Relations Claim.**

The proposed counterclaim alleges that Plaintiffs (Counter-Defendants) were aware of the Scutari Defendants ongoing and imminent relationship with third-party individuals. It alleges that "Counter-Defendants intended to disrupt former, current, and prospective relationships by creating litigation and casting doubt on the value of [the Scutari Defendants'] public relation services." ¶

---

[3] No court mandated settlement conference has been scheduled in this case. Whether the failure to participate in good faith in such a conference would provide grounds for an abuse of process claim is not before the Court.

25.  It further alleges that "Counter Defendants engaged in wrongful conduct by continuing to prosecute the claims stated in their Complaint against [the Scutari Defendants] despite extensive discovery establishing that each statement, whether oral or in writing, was authorized by the Hualapai Tribal Council and Attorneys at Gallagher & Kennedy." ¶ 26.

These claims are barred by absolute litigation privilege.  As stated in *Sahara Gaming v. Culinary Wkrs. Union*, 115 Nev. 212, 216, 984 P.2d 164, 166 (1999), quoting *Circus Circus v. Witherspoon*, 99 Nev. 56, 60, 657 P.2d 101, 104 (1983):

> [There] is [a] long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy.  The absolute privilege precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff.

The scope of the absolute privilege is quite broad.  "The defamatory communication 'need not be strictly relevant to any issue involved' in 'the proposed or pending litigation,' it only need be 'in some way pertinent to the subject of the controversy.'"  *Fink v. Oshins*, 118 Nev. 428, 433, 49 P.3d 640, 644 (2002).  There are, however, limits to the scope of the privilege.  When a communication is made before a judicial proceeding is initiated, it will be cloaked with immunity only if it was made in contemplation of the initiation of the proceeding.  *Id.*  More recently, the Nevada Supreme Court has held that the absolute privilege does not shield defamatory statements about the opposing party made by a litigant to the news media.  *Jacobs v. Adelson*, 130 Nev.Adv.Op. 44, 325 P.3d 1282, 1287 (2014).

The absolute privilege applies not only to claims for defamation, but also to derivative claims such as intentional interference with contractual relations or prospective business advantage, or civil conspiracy.  *See Circus Circus v. Witherspoon* and *Sahara Gaming Corp. v. Culinary Wkrs. Union, supra.*  The district court in Crocket *& Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F.Supp.2d 1184, 1189 (D.Nev. 2006) states that "Nevada has applied the absolute privilege related to judicial proceedings primarily in defamation actions, but has extended its application to other causes of action which derivatively depend on the alleged defamation."  The court cited *Knox v. Dick,* 999 Nev. 514, 665 P.2d 267 (1983) (defamation and intentional infliction of emotional

8

1  distress) and *Sahara Gaming Corp. v. Culinary Wkrs. Union, supra.*

2  Although the Scutari Defendants' proposed counterclaim does not allege a claim for

3  defamation, the cause of action for intentional interference with prospective economic relations is

4  clearly predicated on the allegations made in Plaintiffs' Complaint. Nothing in the proposed

5  counterclaim suggests that it is predicated on any statements or actions made or taken by the

6  Plaintiffs outside the scope of the absolute litigation privilege. The Scutari Defendants' proposed

7  claim for intentional interference with prospective economic relations is therefore barred by the

8  absolute litigation privilege.

9  ## CONCLUSION

10  The Scutari Defendants' proposed counterclaim for abuse of process and intentional

11  interference with prospective economic advantage does not allege facts that would constitute valid

12  and sufficient claims for relief against the Plaintiffs (Counter-Defendants). The proposed

13  counterclaim would therefore be futile. Accordingly,

14  **IT IS HEREBY ORDERED** that Defendants' Motion for Leave to Amend Answer and

15  Assert Counterclaims (#91) is **denied;**

16  **ALTERNATIVELY, IT IS HEREBY RECOMMENDED** that Defendants' Motion for

17  Leave to Amend Answer and Assert Counterclaims (#91) be **denied.**

18  DATED this 26th day of March, 2015.

19

20  _____

21  GEORGE FOLEY, JR.
United States Magistrate Judge

22

23

24

25

26

27

28

9